**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------x
UNITED STATES OF AMERICA,                  :
                                           :
            -against-                      :
                                           :  07-Cr-1015 (LAK)
MICHAEL DEDE,                              :
                                           :
                        Defendant.         :
                                           :
------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT MICHAEL DEDE'S PRE-TRIAL MOTIONS

**VENABLE LLP**
405 Lexington Avenue, 56th Floor
New York, New York 10174
(212) 307-5500
*Attorneys for Defendant*
*Michael Dede*

## **PRELIMINARY STATEMENT**

Defendant Michael Dede respectfully moves this Court for an order (1) requiring disclosure of Brady/Giglio material as early as possible, and no later than one month before trial, pursuant to this Court's discretionary case management authority; (2) requiring the government to review the personnel files of any testifying law enforcement witnesses and to produce, as early as possible, any impeachment material found therein; and (3) requiring the government to inquire of all federal and participating State law enforcement agencies whether the cooperating witnesses have confidential informant files and, if so, to review those files and produce, as early as possible, any impeachment material found therein.

As discussed below, the government's case against Mr. Dede is based on little more than the testimony of two cooperating witnesses. The ability to successfully impeach these witnesses is the key to his defense. As such, early disclosure of the Brady/Giglio material will allow the defense sufficient time to investigate and to prepare to use the information at trial, will prevent any delays at trial, and will ensure the integrity of the verdict and a fair outcome to this proceeding.

## **STATEMENT OF FACTS**

Michael Dede is a 34 year old married father of four. Until his arrest on July 31, 2007, he was employed full-time as a General Utility Worker at Con Edison. During the entire period of criminal activity alleged in the Indictment, Mr. Dede was employed full-time at either Con Edison, AJI (a waste hauling service), or with an asbestos removal company. His wife, Cynthia Diaz, was also employed throughout this period as a controller for real estate management companies.

On July 31, 2007, Mr. Dede, after finishing work for the day, was arrested on a criminal complaint charging him with conspiracy to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846 (the "Complaint"). A copy of the Complaint is attached hereto as Exhibit A.

From the Complaint, it is clear that the government's case is based on little more than the testimony of two cooperating witnesses, both of whom, according to the Complaint, were arrested on August 22, 2006, almost a full year before Mr. Dede was arrested (Complaint ¶ 4). Specifically, the Complaint alleges that Mr. Dede was the heroin supplier for the two cooperating witnesses. (Complaint ¶¶ 6 and 10). The government attempts to corroborate the accusation of the cooperating witnesses by: (1) alleging that they identified Mr. Dede in a photospread (Complaint ¶¶ 8, 12); (2) alleging that they identified the Dede family car (Complaint ¶¶ 7, 12); another cooperator allegedly identified the Dede family apartment (Complaint ¶ 11); the cooperators allegedly called Mr. Dede frequently, which is alleged to be supported by the telephone records with respect to one cooperator (Complaint ¶¶ 13 and 14); and a law enforcement officer allegedly observed one of the cooperators get out of his car, get into Mr. Dede's car and have a ten minute conversation with him (Complaint ¶ 15).

It is not in the Complaint, however, that the two cooperators are lifelong friends of Mr. Dede's, their all having grown-up together and remaining friends through the years. As such, all of the information that allegedly corroborates the cooperators' allegations is equally corroborative of innocent friendships.

Nevertheless, Mr. Dede was indicted on November 5, 2007 and charged with one count of conspiracy to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846. The Indictment is sparse, and sheds little additional light.[1] Mr. Dede entered a plea of not guilty before the Court on November 9, 2007.

## ARGUMENT

### POINT I

#### BECAUSE THE GOVERNMENT'S CASE APPEARS TO BE BASED ALMOST SOLELY ON COOPERATOR TESTIMONY, IT SHOULD PRODUCE BRADY/GIGLIO MATERIAL AS EARLY AS POSSIBLE SO THAT THE DEFENSE HAS ADEQUATE TIME TO INVESTIGATE AND PREPARE

The Second Circuit recently confirmed that Brady and Giglio material must be disclosed, "[i]n a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial **or to use the information to obtain evidence for use in trial**." United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2007) (emphasis added). The Court went on to explain that because of this rule, the government had to make the disclosure, "[i]n a sufficient time that the defendant will have a reasonable opportunity to act upon the information." Id. (citing Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001)). A "reasonable time to act upon the information" surely means, even in the context of pre-trial disclosure as a matter of discretionary "sound case management" (See United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001); United States v. Stein, 424 F.Supp.2d 720, 726-727 (S.D.N.Y. 2007)) a reasonable time to investigate and process the

information, including making a sound and calculated decision as to whether to include it in the defense. That is especially true where, as here, the government's case relies almost entirely on cooperator testimony.

In Leka, which involved the disclosure on the eve of trial of the name and address of an eyewitness whose testimony would have been favorable to the defense, the Second Circuit had the opportunity to discuss the timing of the disclosure. It noted that when such a disclosure is made on the eve of trial or during trial, "[t]he defense may be unable to divert resources from other initiatives and obligations that may seem more pressing and the defense may not be able to assimilate the information into its case. . . Moreover, new witnesses or developments tend to throw existing strategies and preparation into disarray." Leka, 257 F.3d at 101. The Court continued, "[t]he opportunity for use under Brady is the opportunity for a responsible lawyer to use the information with some degree of calculation and forethought." Id., at 103.

Concededly, despite its seeming preference for early disclosure, in Coppa, the Second Circuit rejected on mandamus the District Court's order that all exculpatory and impeachment material be immediately turned over to the defense. Copa, 267 F.3d at 135, 146. As alluded to above, however, the Court remanded the matter to the District Court to consider the scope of pre-trial disclosure it might order, in its discretion, as a matter of "sound case management." Id., at 146; see also Stein, 424 F.Supp.2d at 727.[2]

In the present case, we respectfully request that the Court exercise its discretion and order the government to disclose Brady and Giglio, not subject to 18 U.S.C. § 3500, as early as

---

[1] The Indictment does allege as an overt act that the June 12, 2006 meeting in Mr. Dede's car was a narcotics transaction. This accusation logically would have had to come from the cooperator.

[2] The present case differs from Coppa in many respects. First, Coppa appears to have been a wide-ranging securities fraud with much documentary evidence and not solely dependent on cooperator testimony. See United States v. Shvarts, 90 F.Supp.2d 219, 220-22 (E.D.N.Y. 2000). Furthermore, Mr.

possible and no later than a month before trial as a matter of sound case management. Such disclosure would give the defense sufficient time to investigate the impeachment information and to carefully determine whether and how to best use it at trial. For example, early disclosure of a cooperating witness' criminal history can be used for a defense investigation of those prior offenses, including obtaining court and arrest records, that would lead to a much more detailed and fruitful cross examination. It can also lead to examples of dishonesty and lying under oath if, for example, the cooperating witness testified in a State grand jury in an attempt to avoid indictment. Nor is the utility of early disclosure limited to criminal histories. There is a wealth of investigation that can be done on seemingly minor Giglio information. Again by way of example, learning that a cooperating witness is living in subsidized housing when they can afford no to do so or that the cooperating witness became a naturalized U.S. citizen during the course of criminal conduct can lead – with the appropriate time for investigation – to myriad documents containing false statements. This makes for a much more effective cross examination than merely confronting the witness with, "didn't you lie on your housing application?"

The necessity for early production of Brady/Giglio material is heightened in this case, as the only evidence of Mr. Dede's guilt is cooperator testimony. That evidence which the government posits in the Complaint as corroborating the cooperators is almost meaningless where, as here, it is undisputed that the cooperators are lifelong friends of Mr. Dede's. As such, this trial hinges solely on cooperator testimony, making the defense's ability to fully and completely investigate impeaching information critical.

Nor should the government be placed in a position where it decides what Brady/Giglio information should be turned over early for the defense to investigate. To give the government

---

Dede requests only that Brady/Giglio not subject to the statutory prohibitions against early disclosure of witness statements found in 18 U.S.C. § 3500 and Fed.R. Crim. P. 16.

5

this responsibility "[w]ould be to appoint the fox as henhouse guard." <u>DiSimone v. Phillips</u>, 461 F.3d 181, 195 (2d Cir. 2006) (referring to whether the prosecution should determine whether possible <u>Brady</u> material is reliable). The Court came to a similar conclusion in <u>Rodriguez</u>. In that case, the Second Circuit remanded to the District Court to determine whether, <u>inter alia</u>, it was appropriate for the government to disclose mid-trial that the cooperating witness had initially "lied about everything" to the government. <u>Rodriguez</u>, 496 F.3d at 222, 228, n.6.[3] In so doing, it noted, "[d]isclosure in advance of trial can be advantageous. If the material proves to be the sort that occasions investigation by the defense (**an appraisal better made by the defendant's attorney than by the Government's**), failure to disclose before trial may either deny the defendant the benefit of the disclosure (and perhaps raise doubts about the accuracy of the verdict), or require a mid-trial adjournment . . . " <u>Id.</u>, at 228, n.6 (emphasis added).

Accordingly, given the particular circumstances of this case – that the government's case relies on little more than cooperator testimony – we respectfully request that this Court exercise its discretion and order that Mr. Dede be given the <u>Brady/Giglio</u> material as early as possible so as to provide sufficient time to investigate the exculpatory/impeachment material, consider how best to use it at trial, prevent any delay of the trial and ensure the integrity of the verdict.

---

[3] In <u>Rodriguez</u>, the government agents did not take notes of the earlier meetings in which the witness lied, and the prosecution declined to provide the substance of the lies. <u>Rodriguez</u>, 496 F.3d at 222.

## POINT II

### THE GOVERNMENT SHOULD BE COMPELLED TO REVIEW THE PERSONNEL FILES OF ALL TESTIFYING LAW ENFORCEMENT OFFICERS AND PRODUCE ANY MATERIAL BEARING ON THEIR CREDIBILITY

The government should be compelled to review the personnel files of the law enforcement officers that are expected to testify at trial and to turn over to the defense any material that would bear on their credibility or could otherwise be used to impeach them. As argued in Point I, it is undisputed that the government is required to disclose material impeachment evidence. Rodriguez, 496 F.3d of 225; see also Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763 (1972). This disclosure includes not just exculpatory evidence, but also includes facially neutral evidence that "could be used to counter the government's case or to bolster a defense." United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993). Indeed, impeachment can make a difference between conviction and acquittal. See United States v. Kiszewski, 877 F.2d 210, 216 (2d Cir. 1989); see also United States v. Henthorn, 931 F.2d 29 (9th Cir. 1990).

The officer who witnessed Mr. Dede engage in a ten minute conversation with one of the cooperators and the officer who took his statement (a statement consistent with innocence) will most assuredly testify as to those events. Consequently, the credibility of these officers is of great importance. Accordingly, the government should be compelled to review the personnel files of any testifying law enforcement personnel for any items that bear on the credibility of those officers and turn any impeachment information over to the defense.[4] As set forth in Point I, and for the same reasons, we respectfully request that this review be conducted immediately

---

[4] The review of the personnel files should not be limited to the federal agents' files. It should also extend to the files of any local or state law enforcement officers that will testify at trial. Where, as here, local

and any impeachment materials disclosed to the defense as early as possible and no later than one month before trial.

### POINT III

### THE GOVERNMENT SHOULD BE COMPELLED TO REVIEW THE CONFIDENTIAL INFORMANTS' FILES AND PRODUCE ANY IMPEACHMENT MATERIAL THEREIN

Mr. Dede respectfully requests that the government be compelled to (1) inquire as to the existence of confidential informant files on the cooperating witnesses held by any federal agency or any State agency participating in this case; (2) review any such files; and (3) disclose any impeachment materials found therein.

Under Giglio, a court may allow the disclosure of informants' files. See e.g., United States v. Bejasa, 904 F.2d 137 (2d Cir. 1990) (ruling that disclosure may be compelled where materiality is shown). Indeed, confidential informant files typically contain impeachment material that falls squarely within Giglio, such as whether a confidential informant has cooperated before, the success of that cooperation, whether the confidential informant is now, or has ever been, paid for his services to the government, whether he has testified before, the agency's opinion as to the quality of his information as well as his veracity. Accordingly, as part of its Giglio obligations, Mr. Dede requests that the Court order the government to inquire as to the existence of such files, review them and disclose any impeachment material to the defense. Again, we respectfully request that this disclosure be made as early as possible and no later than one month before trial.

---

law enforcement officers are working under federal auspices, the government is responsible for reviewing their personnel files.

## CONCLUSION

For the reasons set forth herein, Mr. Dede respectfully requests that his motions be granted in their entirety.

Dated: New York, New York
    December 4, 2007

Respectfully submitted,

_____
William H. Devaney (WD 0563)
Liam C. Ewing, Jr. (WE 3781)
VENABLE LLP
405 Lexington Avenue, 56th Floor
New York, New York 10174
(212) 307-5500
*Attorneys for Defendant
Michael Dede*

9

## **EXHIBIT INDEX**

1.  July 31, 2007 Complaint....................................................................  Exhibit A