

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 11, 2007

**BY HAND**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1310
New York, New York 10007

    Re:   United States v. Michael Dede,
           07 Cr. 1015 (LAK)

Dear Judge Kaplan:

      The Government respectfully submits this letter in opposition to the defendant's motions to (1) produce Giglio material one month prior to trial, (2) produce all files and information relating to the confidential informants, and (3) review the personnel files of all testifying law enforcement officers. As discussed below, there is no reason, based on the facts of this case, to produce Giglio material one month prior to trial. Further, the Government does not object to, and indeed intends to provide, any and all Giglio and 3500 material for each of its witnesses, including the cooperating witnesses, at a reasonable time prior to trial. Finally, the Second Circuit does not require the Government to review the personnel files of its testifying law enforcement witnesses without a particular reason to do so, and there is no reason to do so in this case. Thus, this motion should be denied.

**BACKGROUND**

      The defendant is charged in a one Count Indictment with conspiracy to distribute heroin, in violation of Title 21, United States Code, Section 846. (A copy of the Indictment is attached as Exhibit A). The charges arise out of a large-scale narcotics investigation by law enforcement into a heroin organization operating in Yonkers and the Bronx, New York. As part of this investigation, on August 22, 2006, two of the defendant's co-

Hon. Lewis A. Kaplan
December 11, 2007
Page 2

conspirators were arrested. (See Compl. ¶ 4, attached as Exhibit B). Both of these co-conspirators eventually pled guilty pursuant to cooperation agreements. (Compl. ¶¶ 5, 9). According to both of these cooperating witnesses, the defendant supplied them with heroin in bulk in amounts ranging from 100 - 700 grams several times per month. (Compl. ¶¶ 6, 10). The defendant charged between $65 and $68 per gram, and would typically provide the heroin on consignment. (Compl. ¶ 6). The information provided by the cooperators has been corroborated by, among other information learned during the investigation, telephone records and surveillance.

On July 31, 2007, the defendant was arrested based upon the Complaint attached as Exhibit B. The defendant was indicted on November 5, 2007. Discovery has been produced, and trial is scheduled to begin on February 13, 2007.

## DISCUSSION

**A. THE FACTS OF THIS CASE DO NOT WARRANT PRODUCTION OF GIGLIO MATERIAL ONE MONTH PRIOR TO TRIAL**

Dede requests production of all "Brady and Giglio material, not subject to 18 U.S.C. § 3500, as early as possible and no later than a month before trial as a matter of sound case management." (Dede Mem. of Law at 5). This request should be denied as to the Giglio material. As a preliminary matter, the Government recognizes its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and is aware of its continuing duty of disclosure. To date, the Government is aware of no exculpatory material required to be disclosed under Brady or its progeny. Should any such material come to the attention of the Government, it will be disclosed promptly.

The Government has a duty to disclose impeachment information for Government witnesses. Giglio v. United States, 405 U.S. 150, 154 (1972). This disclosure obligation extends only to that material that, "'if suppressed, would deprive the defendant of a fair trial,'" United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (quoting United States v. Bagley, 473 U.S. 667, 675 (1985)), and that such a deprivation occurs only where there is a "reasonable probability" that the suppression "affected the outcome of the case," United States v. Coppa, 267 F.3d at 135 (citing Bagley, 473 U.S. at 682), or would have "'put the whole case in such a different light as to undermine confidence in the verdict,'" Coppa, 267 F.3d at 135 (quoting Kyles v. Whitney, 514 U.S. 419, 435 (1995)).

Hon. Lewis A. Kaplan
December 11, 2007
Page 3

      Giglio material need only be produced for Government witnesses. See United States v. Green, 178 F.3d 1099, 1109 (10th Cir. 1999) (holding that Government was under no obligation to produce Giglio material relating to informant because informant did not testify); United States v. Mullins, 22 F.3d .1365, 1372 (6th Cir. 1994) (same). Giglio material must be disclosed in time for its effective use at trial. United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007); Coppa, 267 F.3d at 135. The Government's Giglio obligation does not require the prosecutor to simply "deliver his entire file to defense counsel." Bagley, 473 U.S. at 675; see also United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987). Rather, it is only material impeachment evidence that must be disclosed. See Bagley, 473 U.S. at 675-76; United States v. Gaggi, 811 F.2d at 59; United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994); United States v. Kiszewski, 877 F.2d 210, 216 (2d Cir. 1989). To meet the threshold of materiality, there must be a reasonable probability that, if disclosed, the impeachment evidence would change the outcome of the trial. See Bagley, 473 U.S. at 675-78; see also Kyles v. Whitley, 514 U.S. at 433-36; United States v. Agurs, 427 U.S. 97, 104 (1976); United States v. Kiszewski, 877 F.2d at 216. This standard requires consideration of whether, in the absence of the impeachment evidence, the defendant would "receive[] a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 534.

      As the defendant notes, this is not a complex or complicated case. The Government does not expect to call more than five or six witnesses, some of whom will be law enforcement. As such, the defense will not be over-burdened by Government production of voluminous materials on the eve of trial. It is obvious the defendant does not want this material "as a matter of sound case management." Rather, the defendant is engaging in a fishing expedition, and seeks a preview of the Government's case and trial strategy. The defendant's letter concedes as much, citing hypothetical examples in support of why Giglio material should be produced early.

      In support of the defendant's early production request, the defendant cites cases where disclosure by the Government came during trial, or right before trial. (See Dede Mem. of Law at 6.) For example, in United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007), the Government failed to disclose the fact that a cooperating witness had lied "about everything" until the witness was testifying on direct examination. Rodriguez, 496 F.3d at 222. This case does not stand for the proposition that the Government must produce Giglio a month before the trial begins.

Hon. Lewis A. Kaplan
December 11, 2007
Page 4

Rodriguez only counsels that Giglio be produced far enough in advance of trial to give the defendant a "reasonable opportunity" to use the evidence. The Rodriguez Court addressed the timing of disclosure, noting that "[i]t is difficult to generalize about when disclosures should be made – beyond the conventional statement that disclosure must be timed to ensure the 'the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.'" Rodriguez, 496 F.3d at 228 n.6 (quoting Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001)). Defense counsel has failed to show, beyond hypotheticals, why it is necessary to receive this information one month before the trial. Indeed, one month before trial, the Government is still considering which witnesses it will call at trial, and how the evidence against the defendant will be submitted.

The Government does not object to producing certain Giglio earlier than the Friday prior to trial (as is the Government's long-standing practice in this district). In conversations with counsel for the defendant, the Government indicated that it would be willing to provide criminal history, as well as other Giglio of which the Government is aware, for the cooperating witnesses it intends to call at trial, on or about February 1, 2008. This is nearly two weeks prior to the start of trial, and will allow the defendant and his counsel more than a reasonable opportunity to use the information provided at trial. This time frame is consistent with the nature of the case and content of the Giglio material, and it is also consistent with Rodriguez. See Rodriguez, 496 F.3d at 228 n.6 ("We recognize that in many instances the Government will have good reason to defer disclosure until the time of the witnesses testimony . . . ."). Hence, the Government submits that producing the criminal history of the cooperating witnesses, as well as other Giglio of which the Government is aware, on or about February 1, 2008, and then producing remaining Giglio the Friday before trial, is appropriate.

B. **THE GOVERNMENT IS ONLY REQUIRED TO PRODUCE DISCOVERY PURSUANT TO RULE 16, AND BRADY, GIGLIO, AND MATERIAL PURSUANT TO 18 U.S.C. § 3500 FOR ITS WITNESSES**

The heading of Point III in the defendant's motion (p. 8) asks that the Court compel production by the Government of "all files and information in their possession relating to the confidential informants." In the body of this section, however, the defendant asks that the Court compel the Government to inquire as to the existence of such information in law

Hon. Lewis A. Kaplan
December 11, 2007
Page 5

enforcement's possession (both federal and state), review these files (to the extent they exist), and disclose impeachment materials. The Government's understanding, based on a conversation with counsel for the defendant, is that the defendant seeks the later, not the former. Assuming this is the case, the Government will comply with its obligations under Giglio and produce all relevant information about its cooperating witnesses, and will exercise due diligence in locating this information (including reviewing files maintained by law enforcement as to the Government's witnesses). For the reasons stated above, the Government objects to producing this information, to the extent it exists, one month prior to trial. The Government does not object, however, to producing this information, to the extent it exists, at a more reasonable time prior to trial.

C.   **THE GOVERNMENT'S EXTENSIVE GIGLIO OBLIGATIONS DO NOT INCLUDE A REVIEW OF LAW ENFORCEMENT WITNESSES' PERSONNEL FILES WITHOUT A SPECIFIC SHOWING THAT SUCH INFORMATION CONTAINS GIGLIO INFORMATION**

The defendant asks this Court to direct that the Government review testifying law enforcement witnesses personnel file for potential Giglio material. (See Dede Mem. of Law at 7-8). The defendant's motion should be denied.

The Government, as it does in all criminal cases in this district, undertakes an extensive Giglio inquiry of all of its testifying law enforcement witnesses. This includes, inter alia, inquiring whether (1) the witness has testified before (either in court or at an agency proceeding); (2) any court or agency has ever found the witnesses testimony not credible; (3) the witness has ever been the target of an investigation, accused of committing a crime, arrested, charged, or convicted of a crime (felony or misdemeanor); (4) the witness has ever been charged with any form of misconduct by his or her current or former employer; (5) a prosecutor, judge, or agency official has ever made any public statements about the reputation or character for truthfulness of the witnesses; (6) the witness has made any prior statements regarding the case that are inconsistent with the information currently provided to the Government; and (7) the witness is aware of any information that might suggest bias or prejudice with respect to the case. If, as a result of the inquiry described above, the witness answers any question in a manner that requires further investigation, then the Government does, of course, investigate. In some circumstances, this investigation will include a review of the law enforcement

Hon. Lewis A. Kaplan
December 11, 2007
Page 6

witness's personnel file. Such a review does not involve the prosecutor assigned to the case. If a review of an law enforcement witnesses personnel file is warranted, then the Office's Ethics Officer conducts a review of the file to determine whether there is any information that requires disclosure. Such a review should not be undertaken, however, without reason. This review should only be triggered, if at all, by a positive response to one of the questions outlined above.

A New York City Police Department employee's personnel file is confidential, and generally not subject to disclosure. See N.Y. Civ. Rights Law § 50-a. New York Civil Rights Law "provides that the personnel files of police officers are not to be disclosed except by consent of the individual or pursuant to court order." United States v. Nogbou, No. 07 Cr. 814 (JFK), 2007 WL 4165683, at *5 (S.D.N.Y. Nov. 19, 2007) (quoting Mercado v. Division of N.Y. State Police, 989 F. Supp. 521, 522 (S.D.N.Y. 1998)). Prior to the Court directing disclosure, "a clear showing of facts sufficient to warrant the judge to request records for review" must be shown. N.Y. Civil Rights Law § 50-a(2). The defendant has made no claim that any law enforcement witness has Giglio or Brady material in their personnel files. Indeed, the Government is not aware of any such material at this time. If the Government learns of potential Giglio or Brady material, it will disclose this information to the defendant. If, after disclosure, the defendant believes it is entitled to a review of the witnesses personnel file, the defendant can raise this request with Government, and, if necessary, with the Court.

The Second Circuit, unlike the Ninth Circuit, see United States v. Henthorn, 931 F.2d 29 (9th Cir. 1990), does not require the Government to review a law enforcement witnesses personnel file. See United States v. Nogbou, No. 07 Cr. 814 (JFK), 2007 WL 4165683, at *2 (S.D.N.Y. Nov. 19, 2007). In United States v. Nogbou, Judge Keenan considered an application by the defendant for an in camera review of a law enforcement witness's personnel file. The defendant in Nogbou was charged with assaulting a federal officer. Judge Keenan considered the charges against the defendant, and concluded that it was appropriate for the court to review the personnel file in camera of the court security officer who was involved in the assault. This was because the defendant was claiming self-defense. Nogbou, 2007 WL 4165683, at *4. He declined to order a review of the personnel files of the other law enforcement witnesses. Nogbou, 2007 WL 4165683, at *4. In this case, the defendant has stated no viable reason for the Government, or the Court, to

conduct a review of testifying law enforcement officers' personnel files. Thus, this motion should be denied.

## CONCLUSION

      For these reasons, the Government respectfully submits that the defendant's motions be denied.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____/s/ Todd Blanche_____
      Todd Blanche
      Assistant U.S. Attorney
      (212) 637-2494

cc by fax:    William Devaney, Esq.
                Attorney for Defendant

# Exhibit A

JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA           :      **INDICTMENT**

   - v. -                          :      **07 CRIM 1015**

MICHAEL DEDE,
 a/k/a "Bart,"
 a/k/a "Sunshine,"                 :

              Defendant.         :

------------------------------------x

## COUNT ONE

The Grand Jury charges:

1. From at least in or about 2004 through in or about August 2006, in the Southern District of New York and elsewhere, MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, and others known and unknown, unlawfully, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute 1 kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 0 5 2007

Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. At various times during the summer of 2005, in Yonkers, New York, MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, sold heroin to another individual.

    b. On or about June 12, 2006, in the Bronx, New York, MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, engaged in a narcotics transaction with another individual.

(Title 21, United States Code, Section 846.)


_____  
FOREPERSON

_____  
MICHAEL J. GARCIA  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

MICHAEL DEDE,
a/k/a "Bart,"
a/k/a "Sunshine,"

Defendant.

---

**INDICTMENT**

07 Cr.

(21 U.S.C. §§ 812, 841(a)(1), and
841(b)(1)(A).)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

---

filed indictment. Case assigned to Judge Kaplan.
—Francis, J.
11/5/07
SRM

# Exhibit B

07 MAG 1252

Approved: _____
           WILLIAM C. KOMAROFF
           Assistant United States Attorney

Before:   HONORABLE HENRY PITMAN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :
                                :
       - v. -                   :         SEALED COMPLAINT
                                :
MICHAEL DEDE,                   :         Violation of
  a/k/a "Bart,"                 :         21 U.S.C. § 846
  a/k/a "Sunshine,"             :
                                :         COUNTY OF OFFENSE:
              Defendant.        :         BRONX
                                :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

       THOMAS E. GERGLEY, being duly sworn, deposes and says that he is a Detective in the New York City Police Department, and charges as follows:

                              COUNT ONE

       1.   From at least in or about 2004 through in or about August 2006, in the Southern District of New York and elsewhere, MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, and others known and unknown, unlawfully, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

       2.   It was a part and an object of the conspiracy that MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute 1 kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A).

       (Title 21, United States Code, Section 846.)

       3.   I am a Detective in the New York City Police Department ("NYPD"), and I have been personally involved in the investigation of this matter.  This affidavit is based upon my

own observations, my conversations with other law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. On or about August 22, 2006, two co-conspirators, not named as defendants herein, ("CC-1" and "CC-2") were arrested in the Bronx, New York.

5. CC-1 has pled guilty in federal court, pursuant to a cooperation agreement, to conspiring to distribute heroin in the Bronx and elsewhere. CC-1 is providing information in hopes of receiving a reduced sentence. The information provided to date by CC-1 has in many instances been corroborated and has proven to be reliable.

6. According to CC-1, MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, supplied him with heroin in various periods, including from in or about 2004 through August 2006. Typically, DEDE supplied the heroin in bulk, i.e. not packaged for retail sale. According to CC-1, he and CC-2 would obtain heroin from DEDE in amounts ranging from 100 to 700 grams at a time 4 to 5 times a month. CC-1, CC-2 and others would package the heroin into retail amounts and supply this heroin to street level drug spots throughout the Bronx and Manhattan. DEDE charged between $65 and $68 dollars per gram, and provided the heroin to CC-1 and CC-2 on consignment.

7. According to CC-1, MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, drove, among other automobiles, a Silver Dodge Durango. In addition, CC-1 indicated that on several occasions, he met with DEDE to pick up heroin and drop off money in the vicinity of 2803 Morris Avenue, Bronx, New York.

8. CC-1 was shown a photo array containing a picture of MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant. CC-1 identified DEDE as "Michael Dede" and indicated that he also knew the defendant as "Bart" and "Sunshine."

9. CC-2 has also pled guilty in federal court, pursuant to a cooperation agreement, to conspiring to distribute heroin in the Bronx and elsewhere. CC-2 is providing information in hopes of receiving a reduced sentence. The information provided to date by CC-2 has in many instances been corroborated

and has proven to be reliable.

10. According to CC-2, MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, supplied him and CC-1 with heroin on a regular basis. CC-2 estimated that DEDE supplied on average about 200 to 500 grams at a time.

11. CC-2 identified 219 Bronx River Road, apartment 3-H, Yonkers, New York as a location at which he sometimes met DEDE to pick up drugs and drop off money in payment for drugs. Based on a law enforcement database I have consulted, 219 Bronx River Road, apartment 3-H, Yonkers, New York is the residence of "Michael Dede" and "Cynthia Diaz." According to both CC-1 and CC-2, Cynthia Diaz resides with DEDE.

12. CC-2 was shown a photo array containing a picture of MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant. CC-1 identified DEDE as "Michael Dede" and also indicated that he knew DEDE as "Bart". CC-2 also indicated that he has observed DEDE driving a newer model Silver Dodge Durango.

13. According to both CC-1 and CC-2, when they needed to communicate with DEDE concerning drug transactions, CC-1 typically placed calls from pay phones to DEDE at telephone number 646-372-0913 (the "Defendant's Cellphone"), and CC-2 typically used his cellphone to communicate with DEDE at the same telephone number via the point-to-point feature of his cellphone.

14. I have reviewed telephone company records for the Defendant's Cellphone. The phone is subscribed in the name "Cynthia Diaz" at 219 Bronx River Road, apartment 3-H, Yonkers, New York. For the period July 2005 through August 2006, there were approximately 216 point-to-point calls between the Defendant's Cellphone and the telephone used by CC-2. According to those same records, from November 2004, through August 2006, there were approximately 355 standard calls between the Defendant's Cellphone and the telephone used by CC-2.

15. On or about June 12, 2006, a fellow detective ("Detective #1) was conducting surveillance of CC-1, who was driving. He followed CC-1 to the vicinity 2803 Morris Avenue, Bronx, New York. There, CC-1 got out of his vehicle and met with an individual in a 2005 Gray Dodge Durango with New York registration number AUW 4865. Detective #1 observed the two have a 10 minute conversation and then observed CC-1 get out of the Durango and drive away in his own vehicle. I subsequently showed Detective #1 a photo array containing photographs of six individuals, included MICHAEL DEDE, a/k/a "Bart," a/k/a

"Sunshine," the defendant, and Detective #1 identified DEDE as the individual he observed meet with CC-1 on or about June 12, 2006. The Durango with NY registration AUW 4865 is registered to "Cynthia Diaz," 219 Bronx River Road, apartment 3-H, Yonkers, New York.

WHEREFORE, deponent prays that a warrant be issued for the arrest of MICHAEL DEDE, a/k/a "Bart," a/k/a "Sunshine," the defendant, and that he be arrested, imprisoned or bailed, as the case may be.

/s/ 
THOMAS E. GERGLEY
DETECTIVE
NEW YORK CITY POLICE DEPARTMENT

JUL 31 2007

Sworn to before me this
31 day of July 2007

/s/ Henry Pitman
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

HENRY PITMAN
United States Magistrate Judge
Southern District of New York

4