**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
      -against-                                        :
                                                            :        07-cr-1015 (LAK)
MICHAEL DEDE,                                               :
                                                            :
              Defendant.                    :
-------------------------------------------------------------------x

## SENTENCING MEMORANDUM OF MICHAEL DEDE IN SUPPORT OF A SENTENCE NOT TO EXCEED MANDATORY MINIMUM

William H. Devaney (WD 0563)
Liam C. Ewing, Jr. (WE 3781)
Rockefeller Center
1270 Avenue of the Americas
25th Floor
New York, New York 10020
*Counsel for Michael Dede*

**VENABLE**®LLP

Rockefeller Center
1270 Avenue of the Americas
The Twenty-Fifth Floor
New York, New York 10020

Telephone 212-307-5500
Facsimile 212-307-5598

www.venable.com

May 12, 2008

**BY ECF & HAND DELIVERY**

Honorable Lewis A. Kaplan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, NY 10007

> Re:    United States v. Michael Dede
>        07 Cr. 1015 (LAK)

Dear Judge Kaplan:

Please accept this letter brief in lieu of a more formal sentencing memorandum in support of Michael Dede's arguments for a sentence not exceeding the 10 year mandatory minimum.

### Introduction

Probation has calculated Mr. Dede's guideline sentencing range at 188 to 235 months.[1] As discussed below, however, such a sentence is inappropriate under the dictates of 18 U.S.C. § 3553(a). As the dozens of letters attached hereto attest, Mr. Dede's adult life has been marked by service to others. He has worked tirelessly, not only to provide and make a better life for his family, but also to hold his family together in the face of death, alcoholism and poverty. Nor do Mr. Dede's acts of selflessness and kindness stop with his immediate family; they also reach to

---

[1] We have not yet received a final Pre-Sentence Investigation Report ("PSR"), and therefore base this submission on the draft PSR.

# VENABLE LLP

May 12, 2008
Page 2

his extended family, friends and neighbors. In short, Mr. Dede's life cannot be judged solely in the context of the jury verdict, but rather in its remarkable entirety.

One of the primary missions of the penal system is to ensure that someone leaving the system will lead a stable life and find steady employment. Mr. Dede has both in his wife and children, extended family and the employers who state that they would immediately re-hire him upon his release. Too lengthy a sentence would likely take all of that away from Mr. Dede, as family, friends and prospective employers move along with the years.

Taking all of this into consideration, and not "leav[ing] compassion and common sense at the door to the courtroom" (United States v. Johnson, 964 F.2d 124, 126 (2d Cir. 1992)), Mr. Dede should not receive a sentence above the 10 year mandatory minimum – a sentence that would clearly be more than sufficient, but certainly not greater than necessary to satisfy the mandates of § 3553(a).

## Background

Mr. Dede was indicted on one count of conspiracy to distribute more than 1 kilogram of heroin, contrary to 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(A), in violation of 21 U.S.C. § 846 -- an offense that carries a statutory mandatory minimum sentence of 10 years in prison. After a two day trial and three days of deliberation, on February 21, 2008, a jury found Mr. Dede guilty.

In the PSR, Probation calculated Mr. Dede's sentence as follows, in relevant part:

- Base offense level . . . . . . . . . . . 36 (10-30 kilograms of heroin)
- Total offense level . . . . . . . . . . . . 36

# VENABLE<sub>LLP</sub>

May 12, 2008
Page 3

> Criminal History Category I
>
> Sentencing range (188 to 235 months).
>
> (PSR ¶¶ 18 to 35, 64)

Such a sentence, however, is certainly greater than that necessary to achieve the purposes of the Sentencing Reform Act.

## Discussion

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court struck down the mandatory application of the Guidelines and re-affirmed the mandates of § 3553(a) of the Sentencing Reform Act. Recently, the Supreme Court made clear that the Guidelines are considered nothing more than the "starting point and the initial benchmark," confirming that they should not be presumed reasonable and that the sentencing court must make an individualized assessment based on the facts presented. <u>Gall v. United States</u>, __ U.S. __, 128 S. Ct. 586, 596-97 (2007); <u>see also</u> <u>Kimbrough v. United States</u>, __ U.S. __, 128 S. Ct. 558, 570 (2007) (while a court is to give respectful consideration to the Guidelines, <u>Booker</u> "permits the Court to tailor the sentence in light of other [ § 3553(a)] statutory concerns as well.", <u>citing</u> <u>Booker</u>, 543 U.S. at 245-46).

Section 3553(a) begins with the declaration that "the Court shall impose a sentence sufficient, but <u>not greater than</u> necessary to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a) (emphasis added). Paragraph 2 contains the traditional sentencing concerns of (A) reflecting the seriousness of the offense, respect for the law and just punishment, (B) adequate deterrence, (C) incapacitation to protect the public from further crimes

VENABLE LLP

May 12, 2008
Page 4

of the defendant, and (D) rehabilitation and medical care in the most effective manner.    18

U.S.C. § 3553(a)(2).

In determining the minimally sufficient sentence, courts are instructed to consider:

- "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

- "the kinds of sentences available." 18 U.S.C. § 3553(a)(3).

- "the kinds of sentence and the sentencing range established ..." [by the Guidelines] and "any pertinent policy statement" from the Sentencing Commission. 18 U.S.C. § 3553(a)(4) and (5).

- "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

- "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

We begin our Section 3553(a) analysis with those factors most relevant to Mr. Dede.


Section 3553(a)(1):
Mr. Dede's History And Characteristics
Warrant the Mandatory Minimum Sentence

Any narcotics offense is serious.[2] But, as the dozens of letters attached hereto attest, Mr.

Dede's remarkable history and characteristics as shown through his devotion to, and unique

central role in, his family (both immediate and extended), his countless good deeds both great

and small within the community, as well as his lifetime of hard work and contribution to society

as a whole more than warrant the minimum possible sentence.

---

[2] Mr. Dede intends to appeal his conviction and nothing herein should be deemed an admission.

VENABLE LLP

May 12, 2008
Page 5

Born into the New York City projects thirty-four years ago, Mr. Dede was raised in the

Fordham and Kingsbridge Heights section of the Bronx by his mother and father, Elba and James

Dede.  (PSR ¶ 38).  Mr. Dede's parents were alcoholics prone to regular violence, creating a

difficult, at times hostile home atmosphere for Mr. Dede and his four siblings, maternal half-

sisters Maribel Figueroa and Maria Torres, and maternal half-brother Carlos Rivera and brother

David Dede.  (PSR ¶¶ 39-40).  Mr. Dede's parents drank heavily on a nightly basis and would

physically attack each other.  (PSR ¶ 40).  While Mr. Dede was never physically harmed, his

father  constantly  verbally  and  psychologically  abused  him  when  drunk.    (PSR  ¶  40).

Furthermore, his father, who had a long history of heart conditions in addition to battling

alcoholism, worked only intermittently in a haphazard effort to provide the family with the basic

necessities, and the Dede family often survived through public assistance.  (PSR ¶¶ 38, 41).

Mr. Dede's teenage life was a struggle, to say the least.  His family and personal troubles

forced him to leave school after the eleventh grade and temporarily steered him into trouble.

(PSR ¶ 52).  But he quickly turned himself around.  Id.  Seeing what alcohol had done to his

parents, he cut out the excessive drinking, and he stopped smoking marijuana.  (PSR ¶ 51).  He

had his first son, MD, in 1991 at age 17, and within two years had a daughter, CD.[3]  (PSR ¶ 42).

Mr. Dede took his newfound fatherhood to mean that he needed to start acting more mature,

work hard at his job, and start becoming more of a family man – a man that his children could

look up to and count upon.  As Father John Dello Russo, the local parish priest, stated in his

---

[3] As per the Court's Individual Rules of Practice for Sentencing Proceedings, initials are being used in place of the names of minors.

# VENABLE®LLP

May 12, 2008
Page 6

letter to the Court, "although Michael grew up in a rough neighborhood… he always struck me as a man of principle and character who wanted the best for himself and for his family."  <u>See</u> letter of Fr. John F. Dello Russo, attached hereto as Exhibit A.

Indeed, Mr. Dede worked tirelessly as a supermarket clerk and later removing asbestos and hauling garbage to provide for his young family (<u>See</u> PSR ¶¶ 56-59).  However, his relationship with Margarita Agusto, MD's and CD's mother, who has severe emotional problems, floundered.  (PSR ¶ 44).  In 2000, Mr. Dede re-united with Cynthia Diaz, a high-school girlfriend, and in 2005, they were married.  Ms. Diaz works as a controller for a large Manhattan commercial real estate firm and is the mother of Mr. Dede's two youngest children, KD (age 3) and MAD (7 months).  (PSR ¶¶ 44, 45, 47).  Both MD and CD, Mr. Dede's children from his prior relationship, also lived with Mr. Dede and Ms. Diaz.  (PSR ¶¶ 42, 47).

As the letters from Mr. Dede's siblings, wife and children detail, Mr. Dede is the core of the family unit and has worked tirelessly to make a better life for them.  Maribel Figueroa, Mr. Dede's oldest sister, put it succinctly when she said in her letter to the Court that, "Michael goes beyond the call of duty when it comes to being a father, a brother, a son, an uncle and a husband."  <u>See</u> letter of Maribel Figueroa, attached hereto as Exhibit B.  Another sister, Maria Torres, similarly stated in her letter to the Court:

> I have watched my loving brother grow into a loving man.  He is also a caring and compassionate father to his four children, which includes a newborn….  Michael has persevered to do better and achieve all that he could possibly achieve not just for himself, but for his family as well.

<u>See</u> letter of Maria Torres, attached hereto as Exhibit C.

# VENABLE®LLP

May 12, 2008
Page 7

When Mr. Dede's mother died in 2003 at the age of 58 from stomach cancer and cirrhosis

of the liver, the event was devastating to the Dede family.  (PSR ¶ 38).  Her death, however,

thanks to Mr. Dede, has brought the family closer together.  Mr. Dede's father, James Dede,

describes this and Mr. Dede's role in his life in his letter:

> My wife passed away on June 27, 2003 of stomach cancer and cirrhosis of
> the liver.... Although [my children] are adults, we are always together and
> remain a close knit family.  Michael has always been by my side, helping
> me to maintain the family together....  It has always been Michael who
> takes charge of organizing family events and helping to keep the family
> together.  My son has always been the strength of the family.  Life for our
> family has not been the same since Michael has left.
>
> • • •
>
> Michael stopped being our child and assumed the role of caregiver for both
> my wife and I over ten years ago.  We both struggled with alcoholism and
> Michael always made sure he was involved in our daily lives.  In addition
> to his own responsibilities, he assumed ours as well.  We relied on him to
> take us to our doctor's appointments, run our errands and obtain groceries.
> He even made sure that we were maintaining a clean and habitable home.
> A normal day included a phone call from Michael to ask how we were
> doing, did we eat, did we need anything, and to tell us he loved us....  There
> is no life that goes untouched by Michael if it is within his reach.

See letter of James Dede, attached hereto as Exhibit D.

Mr. Dede's sister, Maria, expressed the same feelings in her letter to the Court, stating

"[he] is the strongest unit of our family."  See letter of Maria Torres, attached hereto as Exhibit

C.  And, this same sentiment is reiterated by most all of Mr. Dede's family members, including

his mother-in-law, Maria Diaz, who said in her letter: "We have become one big happy family

because of him.  His ultimate goal has always been to unite everyone into a great big happy

family and he has accomplished that."  See letter of Maria Diaz, attached hereto as Exhibit E.

VENABLE LLP

May 12, 2008
Page 8

Mr. Dede is a husband and father who insist on spending as much time as possible with his children. Mr. Dede organizes the family outings, the barbeques and birthday parties and makes sure all homework is completed. Because of his own father's alcoholism and psychological abuse of him, Mr. Dede did not have a positive relationship with him while growing-up. As a result of this and the other hardships Mr. Dede endured as a child, he has taken every opportunity and made every effort to provide a sound influence on his own children's lives. As Ms. Diaz discusses in her letter to the Court:

> Michael plays a very active role in all four of his children's lives and has always tried to set a great example for them. My three-year-old son is having a very hard time every evening when his father does not come home. He would always put him to bed, give him chocolate milk and read him a bedtime story. He was also very good with our newborn baby. He taught the rest of us how to burp her....

See letter of Cynthia Diaz, attached hereto as Exhibit F.

In addition to emphasizing work ethic and kindness, Mr. Dede focuses his children on education. Although Mr. Dede dropped out of school in the eleventh grade, he returned at the age of 29 to get his GED and had hoped to take college courses through his employer, Con Edison. As Ms. Diaz wrote:

> He has taught them [his children] to live by sound morals and be the best they can possibly be at anything they attempt. He has always led by example. He returned to school to obtain his GED when he was almost thirty, in an effort to show our children that an education and hard work is priceless.

Id.

VENABLE.LLP

May 12, 2008
Page 9

As noted, Mr. Dede had his first child, MD, when he was 17 years old, the same age MD is today. Although Mr. Dede was little more than a child himself when MD was born, and others in the neighborhood where Mr. Dede grew-up left their babies to be raised by the child's mother with little involvement, Mr. Dede took responsibility. He raised MD and CD. Tellingly, although Mr. Dede and MD's and CD's mother separated, MD and CD came to live with Mr. Dede and Ms. Diaz because of the positive environment and focus on education in that household. Indeed, to see Mr. Dede's positive impact on his children, the Court need look no further than MD's letter:

> Although my father was very young when I was born, he has always taken care of me. [. . .] I have learned that the reason he sets rules and pushes us the way he does is because he wants the best for us. He took me to live with him so that he could monitor my school work and guide me through my High School years. We often discuss college and career goals. Even now, every single letter he has written us has told us to focus and do well in school.

See letter of MD, attached hereto as Exhibit G.

At one point, Mr. Dede asked his son what he wanted to do when he grew up, and MD responded that he wants to be an orthodontist. Mr. Dede encouraged his son to pursue this goal and avoid the life of hard labor that Mr. Dede had taken on. Indeed, MD wrote to the Court in his letter: "Whenever I start to veer off track, I remember that he always said, 'You have a choice, you can make money using your physical abilities like me, or you can make money using your brain…." Id.

Mr. Dede's oldest daughter, CD, echoes the same sentiments:

# VENABLE®LLP

May 12, 2008
Page 10

> My father's first priority was always to make sure my brother MD and I did
> great in school. He always went to our parent-teacher conferences. He
> always checked our books to make sure we were doing our assignments
> and kept neat notebooks. That is what we did every night. We got ready
> for school and work and we spent time together.

See letter of CD, attached hereto as Exhibit H.

The impact of Mr. Dede's absence from his family is not slight. Mr. Dede has left behind

a wife and four children who love him dearly, depend on him and miss his daily presence in their

lives. Mr. Dede spent so much time with, and focused so much attention on, his family, it is

devastating for them now not to have any time with him at all. Ms. Diaz writes in her letter:

> [Michael] is my partner and my best friend. We take care of everything
> together. We raise children together, we run errands together, we wash
> clothes together, we clean the house together.... He is the core of our
> entire family: the one that plans summer barbeques, Christmas gatherings,
> visits to his mother's gravesite, and many other opportunities to bring our
> families together – especially after his mother's death. Family is very
> important to him.... Michael is our foundation.

See letter of Cynthia Diaz, attached hereto as Exhibit F.

Certainly, for Mr. Dede's older children, MD and CD, the loss of their father for a

significant period of time and particularly through this period of their development into young

adults is significant. And as can be seen from their letters, they are already feeling a massive

impact. But for KD and MAD, the toddler and infant with whom Mr. Dede likewise dedicates so

much of his daily time, it may even be more significant. As Michael's oldest child, MD stated:

> As hard as this has been on me, I can't help but think and worry about
> how hard it has been on my younger sisters and my little brother Kyle. I
> find myself constantly thinking about their well being and their pain. We
> always joked about me being the next person in control over the family,
> but this is no laughing matter and I do not look forward to that



May 12, 2008
Page 11

> responsibility.  I am even more impressed by my father after having felt
> like I had to take on these responsibilities, after only two months.  I don't
> know how he does it but he does a great job.  We each feel loved and
> protected and no one feels left out.  We are each equally important to him.
> He is truly the best!

See letter of MD, attached hereto as Exhibit G.

Indeed, it is detailed in numerous letters to the Court attached hereto that KD, at 3 years of age, keenly feels his father's absence.  Wanda Rodriguez, a childcare provider in the neighborhood and eight-year friend of the family, expressed in her letter to the Court the impact on KD not having his father at home: "This is very hard for his family, especially his two little ones.  KD is only three years old and he already misses his daddy.  He is always asking for him." See letter of Wanda Rodriguez, attached hereto as Exhibit I; see also letter of Michele Soanes, attached hereto as Exhibit J ("It is a privilege to see the gleam in his eyes as he rumbles on the floor with KD or tenderly feeds MAD.").

Similarly, Laura Rodriguez, a family friend of nearly a decade, writes:

> It breaks my heart to see his three year old son KD.  He misses his Dad
> very much.  Since he doesn't see him everyday, whenever he sees us, the
> first thing he asks is where is his Daddy?  It's almost like he wants to
> check with everyone to see if they know when he is coming home.  He
> also has a six month old daughter named MAD and two teenage kids from
> a prior relationship.  He is great with all his children and even with kids
> that are not his own.

See letter of Laura Rodriguez, attached hereto as Exhibit K.

Mr. Dede's sister, Maribel Figueroa, sums up the ultimate impact of Mr. Dede's children losing a father so central to their lives:



May 12, 2008
Page 12

> His incarceration will also leave his wife with the difficult task of not only having to wipe away the tears from their youngest son's eyes, but with the complicated task of having to fill the void of only which my brother can fill.

<u>See</u> letter of Maribel Figueroa, attached hereto as Exhibit B.

The 10 year mandatory minimum sentence here is unquestionably a lengthy period of time. But it is not so lengthy that Mr. Dede will not be able to again play the meaningful role he has played in KD's (age 3) and MAD's (age 7 months) childhood, as they would be 11½ and 9, respectively, upon his release were Mr. Dede to receive the minimum sentence (including estimated "good time" credit). But, a sentence anywhere in the guideline range would essentially deny them their father's influence during any of their crucial childhood years, as they would be 16½ to 20 years old and 14 to 17 years old, respectively, (including estimated "good time" credit) upon his release.

As the above demonstrates, Mr. Dede plays the central role in his immediate family. But he also plays an important role in the life of his extended family. For example, AB, Mr. Dede's thirteen year-old niece, wrote to the Court that "Michael has always been a great uncle to me. He is always encouraging me to do well in school. Even now that he is incarcerated, he writes to me and tells me that I need to do well in school because it is very important. I miss him very, very much." <u>See</u> letter of AB, attached hereto as Exhibit L.

Priscilla Diaz, Mr. Dede's sister-in-law, feels the loss of a man she views as the father she never had, having been raised in a single parent household with Mr. Dede's wife, Cynthia. It was Mr. Dede's pushing Priscilla, now a chef, to take her studies more seriously that ultimately

VENABLE·LLP

May 12, 2008
Page 13

caused Mr. Dede to re-energize his own effort towards his high school equivalency degree.

Priscilla Diaz writes:

> I never had a father figure in my life, and that is the role Michael assumed when he entered our family. When my sister and Michael began dating, I was just entering High School. I began to get into trouble and I was not doing so well in school. Michael was there to teach me the importance of family, goals and an education. Even though he didn't finish High School, he told me he regretted it greatly and thought about it often. He told me he felt like a hypocrite preaching the importance of school when he had not finished. However, he promised me that was going to change. Soon after, he obtained his General Equivalency Diploma (GED).

See letter of Priscilla Diaz, attached hereto as Exhibit M.

Priscilla Diaz's mother, Maria Diaz, also described Mr. Dede's role in Priscilla's life:

> I have a twenty-one year old daughter named Priscilla and her father does not play an active role in her life. Since the day Michael began dating my daughter Cynthia, he has taken on an active role in my daughter Priscilla's life. He has always gave her great advise and has been a part of every exciting milestone she has reached. There was a time when she was receiving an award in High School and neither Cynthia nor I could take off. Michael was there to show Priscilla support and represented the sheer pride we all felt for her success. He has represented the father in her life and has walked her through the paths that a father normally guides his young daughter through. From teaching her to drive and purchasing her first second-hand car, through the talks of boys and relationships, Michael has been there for her.

See letter of Maria Diaz, attached hereto as Exhibit E.

Mr. Dede's oldest brother, Carlos Rivera (a maternal half-brother), speaks of Mr. Dede as the man on whom he could always count. In one instance, Mr. Dede was talking with Mr. Rivera on the phone when Mr. Rivera mentioned in passing that he was concerned that his son was having discipline problems at school. Mr. Rivera, in his letter to the Court, expresses his

# VENABLE<sub>LLP</sub>

appreciation for his brother's unanticipated response: "That weekend, my brother came by unexpected, picked up my son and spent some time with him. I knew he had come by to talk to him with regards to what I had mentioned on the phone that week…. He has always been a family man whose main concern is our family's wellbeing." See letter of Carlos Juan Rivera, attached hereto as Exhibit N. Similarly, Mr. Dede's nephew, Jason Moreta writes in his letter to the Court: "He has been nothing but a role model my whole life. He has been there for me whenever I needed him and has shown me what it is to be a true man." See letter of Jason Moreta, attached hereto as Exhibit O.

Monique Figueroa, Mr. Dede's first-born niece and a senior in college considers Michael to be an older brother. She, like so many other family and friends in the attached letters, describes Mr. Dede as a kind, funny, caring family man who plans events specifically to bring his family together and relishes any opportunity that arises to celebrate a family occasion. Ms. Figueroa describes in her letter to the Court:

> My uncle is one of the kindest people you could ever meet. He is funny, caring and he loves his family…. Having him gone has caused a tremendous amount of stress on my family and me. My uncle is the one that brings lots of joy to our family gatherings.

See letter of Monique Figueroa, attached hereto as Exhibit P.

Friends of the Dede family are also quick to recognize these qualities in Mr. Dede. For example, Ruben Guzman, a friend of the family, wrote in his letter to the Court:

> Michael Dede has really shown, not only me, but others that know him, that he is a responsible husband, father and friend…. In every family event that Cynthia and Michael have invited me to, I noticed how important Michael was. He helps contribute to the family nucleus [in a way] that

# VENABLE<sup>®</sup>LLP

May 12, 2008
Page 15

>most children do not have today because their fathers are not around.  I
>admire him for his awareness of how his children should be brought up....

See letter of Ruben Guzman, attached hereto as Exhibit Q.

Mr. Dede is not only the cornerstone of the Dede family foundation because he provided

for them emotionally and intellectually.  He has also spent a lifetime working at hard labor jobs

to provide for them financially.  See letters of Maria Torres, James Dede and Cynthia Diaz,

attached hereto as Exhibits C, D and F, respectively.  Mr. Dede has worked as a stock boy in the

neighborhood supermarket (see PSR ¶ 59 and letter of Ramon Rivera, attached hereto as Exhibit

R), for various asbestos removal companies throughout the mid-to-late 1990s up to mid-2006

(see, e.g., PSR ¶ 58 and letter of Jose Sanchez, attached hereto as Exhibit Y) and for a garbage

removal company for almost six years (see PSR ¶ 57 and letter of Anthony Iacovone, attached

hereto as Exhibit S).  He took a job at Con Edison in mid-2006 because he could finally get the

medical and retirement benefits for his family for which he had always hoped (see PSR ¶ 56,

letter of Robert Demascio, attached hereto as Exhibit T).  Nor did Mr. Dede sit at home

wallowing in his troubles after his arrest.  Suspended from Con Edison because of the arrest in

this matter, Mr. Dede found yet another hard, physical job at Royal Waste, a private sanitation

company, where he worked until his trial.  See letter of Cynthia Diaz, attached hereto as Exhibit

F.

As Ms. Diaz wrote in her letter to the Court:

>Michael is a superb husband, father, son, uncle and friend.  He is not
>selfish nor is he self-centered.  He is a very hard worker.  I remember
>referring to him back in the 1990s as the stock boy from our local
>supermarket.  Upon his arrest, he was suspended from his job at Con

# VENABLE<sup>®</sup><sub>LLP</sub>

May 12, 2008
Page 16

> Edison of New York. He worked diligently for over a year to obtain that
> job. Although he was devastated about losing his job and very concerned
> with the case at hand, he went out and worked hard to obtain another job so
> that he could continue to help contribute to the family's financial
> responsibilities.

<u>See</u> <u>Id.</u>

Not only do Mr. Dede's former employers attest to his character and work ethic, almost all state their willingness to hire him upon his release from prison. For example, Mr. Dede's former supervisor at the grocery store, Ramon Rivera, states "Michael was one of our best employees. He was reliable, responsible and always punctual. Although he was young at the time, he always had great work ethics... If Michael needed to obtain employment and was interested in returning to the food industry, I would hire him on the spot." <u>See</u> letter of Ramon Rivera, attached hereto as Exhibit R.

A co-worker of Mr. Dede's at AJI Industries wrote:

> Michael turned out to be one of their best employees and was employed
> there for almost six years. He worked everything from dispatching and
> training to driver. Ultimately, he left AJI to pursue employment at a
> company that had long term benefits for him and his family.... Should he
> need employment upon release, I would contact everyone in my network to
> help him establish a permanent position.

<u>See</u> letter of Santos Figueroa, attached hereto as Exhibit U.

Indeed, the owner and President of AJI, Anthony Iacovone, agrees in his letter to the Court that Mr. Dede quickly became one of his best employees:

> Michael worked for five-and-a-half years as a valuable asset to my
> business. Michael was reliable, hardworking and conscientious. Michael
> could be counted on to stay late to complete work, when others were too
> tired to stay late.... I found him to be a man concerned about bettering

# VENABLE®LLP

> himself so that his family would benefit.... The few times Michael took
> any time off was to attend school meetings for his children.

See letter of Anthony Iacovone, attached hereto as Exhibit S.

As noted, Mr. Dede left AJI because he knew that his family would be better off were he

to obtain employment that offered medical and retirement benefits. Accordingly, he sought and

obtained a position with a work crew at Con Edison in mid-2006. Robert Demascio, one of

Michael's senior supervisors at Con Edison who has been employed with the company for 26

years, writes in his letter to the Court:

> I have worked with the company for many years, and I have worked with
> various crews but Michael made a great impression on everyone, including
> myself, from the moment he stepped foot in our yard. He has very
> desirable work ethics. One can only wish that there were more available
> employees like him to join our teams.... He never shied away from tasks
> and was always willing to work late.... Not only is he a great worker but
> also a well-rounded individual with a great big heart. I would
> wholeheartedly work to help get him reestablished at our company.

See letter of Robert Demascio, attached hereto as Exhibit T.

Another supervisor from Con Edison, Thomas Santos, wrote of Mr. Dede:

> He proved himself to be hardworking, self motivated and accountable for
> his actions. Working in all types of weather and adverse conditions,
> Michael showed he wanted a job and looked forward to coming to work
> everyday. . . .
>
> I recall a conversation I had with Michael about another individual who
> was not working out as well as Michael with Con Edison. We were
> discussing what motivates certain individuals and he spoke to me about
> his motivation. He told me how much he cared for his family and how
> much he needed his job in order to provide for them. His family seemed
> to come up often in our conversation and it is obvious to me that he cares
> for them very much.

VENABLE®LLP

May 12, 2008
Page 18

<u>See</u> letter of Thomas Santos, attached hereto as Exhibit V.

Clearly, Mr. Dede is a dedicated family man, not only to his wife and children, but also to his extended family. And, clearly, he has a long history of hard work. But Mr. Dede also has a long history of good works and will go out of his way to help others in need, whether family, friends or neighbors. "Michael is very generous and he has a very kind heart...[he] is always worried about someone else's situation," wrote Jesse Cintron, a near decade-long friend. <u>See</u> Exhibit W. Indeed, it is recounted in several letters how Mr. Dede as a young boy would run downstairs early on weekend mornings in order to help the garbage men bring the trashcans out of the buildings and load them on the trucks. <u>See</u> letters of Maria Torres and James Dede, attached hereto as Exhibits C and D.

As Ms. Diaz pointed out in her letter to the Court, "Michael is unselfish." <u>See</u> Exhibit F. Indeed, Mr. Dede's service to his community through countless good works and acts of kindness is as remarkable as his service to his family. Mr. Dede is not a wealthy man who can freely give to charities. Nor does Mr. Dede, who works tirelessly to provide for his family – often at two jobs – have a lot of free time to give to charitable work. Rather, Mr. Dede's commitment and donations to the community have come in the form of countless good deeds and acts of kindness over the years, a few of which are recounted here.

When Mr. Dede's mother-in-law, Maria Diaz, first met Mr. Dede, he was covered from head to toe in dirt. Maria Diaz thought it odd because it was a weekend day and did not think Mr. Dede had been at his regular job. Mr. Dede explained to her that "one of the older guys on the block needed help cleaning out his garage because the man's son was too busy to help him.

# VENABLE®LLP

May 12, 2008
Page 19

The man had mentioned this to Michael's father and once his father told Michael, he went right

over to help him." See letter of Maria Diaz, attached hereto as Exhibit E.

In her letter to the Court, Myrna Nieves describes Mr. Dede's assistance to her after her

husband was deployed to Iraq for over a year-and-a-half, leaving her to manage her four children

on her own:

> Whenever I needed help around the house or needed to run errands,
> Michael was always someone I could call on to help me at a moment's
> notice. It takes a good-hearted person to help someone with four children
> and their responsibilities when they have four children and responsibilities
> of their own to manage.

See letter of Myrna Nieves, attached hereto as Exhibit X.

Mr. Dede's has also physically put himself at great risk to help others, once saving a co-

worker's life, as a former employer, Jose Sanchez, writes:

> One day while we were performing asbestos abatement in the boiler room
> of a NYC Housing Complex, one of my employees was on a scaffolding
> 60 feet above ground when he decided to step outside of the safety rail and
> use a nail on the wall as additional foot support. Eventually, the nail gave
> way and the employee fell onto a steam pipe that broke his fall
> momentarily. He was about to continue his fall head-first into a pit that
> would have resulted in his death when Michael jumped to his safety. He
> used his own body as support to hold up the worker from plummeting.
> Had Michael worried about his own safety for just one second before
> reacting, the employee could have been severely injured or maybe even
> worst.

See letter of Jose Sanchez, attached hereto as Exhibit Y.

Mr. Dede specifically goes out of his way to assist young people. For example, Wanda

Rodriguez, a child care provider, noted in her letter to the Court: "I have always seen him doing

the right thing for his kids or for anyone else that needed help. He always watched over other

# VENABLE<sub>LLP</sub>

May 12, 2008
Page 20

kids in the neighborhood and always gave them good advice." <u>See</u> letter of Wanda Rodriguez,

attached hereto as Exhibit I.

> Along those same lines, Noemi Cotto had the following to say about Mr. Dede:

>> [Michael is] always willing to help others without expecting anything in return.... His willingness to always provide assistance and be an active member in his community makes him a role model to others.... My brother has been influenced by the streets in many ways. Michael has taken the time to discuss life, fatherhood, work and self-empowerment with my brother in order to get him to view things in a positive light and guide him in the right direction.

<u>See</u> letter of Noemi Cotto, attached hereto as Exhibit Z.

> Katrina Seals described a similar situation in her letter to the Court in which her brother's

involvement in a street gang was tearing her family apart and was causing a massive

communication problem within the family:

>> I explained to Michael that I was afraid that my brother had joined a gang. He advised me to keep the lines of communication open between my brother, my mother and I [and] that I should provide as much family time [as possible].... Whenever Michael comes in contact with my brother who is now 15 years of age, Michael engages him and provides him great conversation, advice and food for thought.

<u>See</u> letter of Katrina Seals, attached hereto as Exhibit AA.

> Similarly, Lenny Gonzalez, a long time albeit younger friend writes about Mr.

Dede's encouraging him to focus on school and avoid the easy pitfalls that come with

growing-up in a difficult neighborhood:

>> Through his guidance and others, I went on to graduate from M.S. 118 Pace Academy, which is a program for gifted and talented individuals, then from Cardinal Hayes High School, which I graduated 8th in my

VENABLE<sub>LLP</sub>

May 12, 2008
Page 21

> senior class, and then from Fordham University. In times of need, he's
> had plenty of one-on-ones with me in order to provide me with the
> knowledge and wisdom that will help direct me in the correct path.

> • • •

> Through his guidance and his family, he has made a difference in my life
> and I know he can do the same for many others. However, his long-term
> incarceration will hinder his potential to help others in need.

See letter of Lenny Gonzalez, attached hereto as Exhibit BB.

Mr. Gonzalez graduated from Fordham in 2004 and is now employed at

Affinity Health Plan.

Mr. Gonzalez's brother, Hiram Gonzalez, similarly writes:

> Being raised in the city, in a single family home with two younger
> siblings, it was not always easy to avoid the wrong crowd. With no father
> figure in the home, we looked to many of the older ones to steer us in the
> right direction, one of which was Michael Dede. He constantly reminded
> us to make our mother proud by not getting involved in something we
> would later regret. It was like having an older brother.

See letter of Hiram Gonzalez, attached hereto as Exhibit CC.

A third Gonzalez brother, Joel, now the National Sales Manager for the Ecko

Unlimited clothing brand states:

> As I mentioned earlier, throughout my life Michael has been an individual
> who has guided and molded not only myself but my two brothers.
> Growing up without a father figure and living in the Bronx were two
> difficult obstacles that could have been a recipe for disaster but Michael
> was one individual who always managed to show me the right way. Why
> it was important to finish school, why my family was important and why it
> was important to pursue my dreams. One memory that comes to mind is
> the day I was graduating from Cardinal Hayes High School. The day
> before graduation he saw me and congratulated me but realized I was still
> sad. He asked why I looked upset, that it was an amazing accomplishment

VENABLE°LLP

May 12, 2008
Page 22

> and I told him, I don't have shoes to wear and I don't want to embarrass
> my mom or myself. His act of generosity is something I will always
> remember; he went to his apartment and said "wear my shoe Joel." I was
> dumbfounded and although they weren't the greatest of shoes and they
> didn't match (and there weren't my size) I wore them proud. He wanted
> me to look my best and my mother could not have thanked him enough for
> doing that. Just one of the many things he did to help me because he
> realized that in my life there was no one to help guide my siblings and I
> with the exception of my mother.

See letter of Joel Gonzalez, attached hereto as Exhibit DD.

Nor are the Gonzales brothers or other persons mentioned above the only young people
Mr. Dede has helped over the years. The letters of the Lawrence sisters express similar
sentiments of having benefitted from Mr. Dede's advice and instinctively helpful nature. See
letters of Crystal and Tracey Lawrence, attached collectively hereto as Exhibit EE.

Indeed, as Mr. Dede's father, James Dede, points out in his letter to the Court, "we refer
to him as the preacher because he spends his days preaching to any kid that would listen about
the importance of school, family and attainable goals. There is no life that goes untouched by
Michael if it is within his reach." See Exhibit D.

Truly, Mr. Dede has helped many in their times of need. Dawn Lawrence, a lifetime
friend writes:

> Michael always welcomed me into his family and has proven time and
> time again that although we were not blood related that we are and
> always will be family. I remember the time when he was informed that I
> was pregnant at the young age of seventeen. Unsure of anything but the
> fact that I was about to enter into the unknown world of motherhood,
> Michael did not look down on me or count me out as many would have,
> however, he was there for me with open arms and genuine support.
> Michael and I discussed all that I would be facing and supported my
> decision never once letting me feel forgotten or rejected. From that day

# VENABLE™LLP

May 12, 2008
Page 23

> forth I vowed to be the best mom that I could be as he told that my
> failure or success would be up to me and I chose to succeed and I did.

<u>See</u> letter of Dawn Lawrence, attached hereto as Exhibit FF.

Jose Sanchez, a former employer, similarly discusses Mr. Dede's help at a time of great

turmoil in Mr. Sanchez's life:

> Several years ago, I was going through a divorce and I remember
> Michael offered me great advice. He strongly recommended that I
> always remain close to my children and that no matter what events
> developed throughout my life or theirs, I should never give up on them or
> become distant. Whenever I think of Michael outside of business, I
> remember him for his valuable advice and I am forever thankful because
> in time of personal despair he helped me to focus on what was more
> important; my children.

<u>See</u> letter of Jose Sanchez, attached hereto as Exhibit Y.

Likewise, another lifelong friend, Santos Figueroa, writes about Mr. Dede's actions when

Mr. Figueroa's first child died.

> When my wife lost our first child, Michael was there to comfort me and
> my family through a very trying time in our lives. I could feel him
> sharing our pain. During my wife's hospital stay, Michael drove me to
> and from the hospital numerous times because my car was in the repair
> shop.

<u>See</u> letter of Santos Figueroa, attached hereto as Exhibit U.

Even after his arrest, and immediately before his trial in this case when his sole focus,

understandably, could have been on himself, Mr. Dede still took the time to consider others, as a

former co-worker Barbara Perrone describes in her letter:

> On a personal note, when my husband passed away in December 2007,
> Michael, upon hearing of this, contacted me immediately to give his



> sympathy and continued to contact me periodically, just to see how I was doing and to give words of encouragement.

<u>See</u> letter of Barbara Perrone, attached hereto as Exhibit GG.

Mr. Dede also performs small acts of kindness for his neighbors and friends. For example, Mercedes Medina wrote that, after lending Mr. Dede and Ms. Diaz her minivan so that they could have the entire family in one car for a vacation, Mr. Dede returned the van, but only after he "had given the van a tune-up, changed the oil, cleaned the van and even replaced a defective part." <u>See</u> letter of Mercedes Medina, attached hereto as Exhibit HH. Along the same lines, Luis Nieves writes to the Court that "what attracted me most to Mr. Dede was his sincere selflessness.... Michael has helped my family with our automobiles, our home, planning our girl's sweet sixteen, job searches and even medical recommendations." <u>See</u> letter of Luis Nieves, attached hereto as Exhibit II.

Nelsi and Heraclio Santos are two other family friends who recount similar instances of Mr. Dede's sense of community and his willingness to help those in need when Ms. Santos, a former co-worker of Ms. Diaz's, wrote in their letter to the Court, "they attended my retirement party and the celebration in preparation for my first grandchild. Throughout the years, our families have grown very close. Michael is a great man and is always willing to help others. On several occasions, he has helped us with home improvement projects at our house." <u>See</u> letter of Nelsi and Heraclio Santos, attached hereto as Exhibit JJ. And, the letters quoted above are not the only letters submitted on Mr. Dede's behalf. The remainder, including letters discussing further acts of kindness, are collectively attached hereto as Exhibit KK.

# VENABLE®LLP

May 12, 2008
Page 25

Clearly, Michael Dede has had an extremely positive impact on many lives. Many depend on him from family to friends. While the least possible sentence certainly redounds to Mr. Dede's benefit, it also redounds to the benefit of the many people who depend on him and whose lives he makes better. See United States v. Milikowsky, 65 F.3d 4, 8 (2d Cir.1995) ("Among the permissible justifications for downward departure ... is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties").

18 U.S.C. § 3553(a)(3):
The Kinds of Sentences Available

The only sentence available to the Court is 10 years to life. 21 U.S.C. § 841(b)(1)(A)(i). Unquestionably, the mandatory minimum here is in and of itself a severe sentence, especially for a man with the personal history and characteristics of Mr. Dede. If the Court had it in its authority to impose a lesser sentence, we would respectfully request it. As Justice Kennedy noted, "In too many cases mandatory minimum sentences are unwise and unjust." United States v. Polizzi, ___ F.Supp.2d ___, 2008 WL 1886006 (E.D.N.Y. 2004) at *44, quoting Anthony M. Kennedy, Assoc. Justice, Supreme Court of the United States, Address at the ABA Annual Meeting (August 9, 2003).

# VENABLE®LLP

May 12, 2008
Page 26

> 18 U.S.C. § 3553(a)(4) and (5):
> Mr. Dede's Extraordinary Family Circumstances,
> Personal History and Good Works Alone
> And In Combination Warrant a Downward Departure
> From the Applicable Guideline Range

A district court will normally have to determine the applicable Guideline range in the same manner as before Booker in order to consider it with the other § 3553(a) factors, but it does not have to definitively resolve all Guidelines issues.  United States v. Crosby, 397 F.3d 103, 111-112 (2d Cir. 2005); see also, United States v. Collazo, No. 06-5236, 2008 WL 45401 (Summary Order) (2d Cir. Jan. 3, 2008) at *2 (a sentencing court as a matter of process will usually start by considering the presentencing report and its interpretation of the Guidelines).

Probation has calculated Mr. Dede's sentencing range at 188 to 235 months (PSR ¶¶ 18-37, 64).  In determining the Guideline range in order to consider it with the other § 3553(a) factors, however, the Court should downwardly depart to a Guideline range that would result in the imposition of a sentence no greater than the 10 year mandatory minimum on the grounds that Mr. Dede's family circumstances and his lifetime of hard work and good deeds, as discussed above and in the many letters attached hereto, are extraordinary and move him far outside the "heartland" of typical narcotics defendants.

In Koon v. United States, 518 U.S. 81 (1996), the Supreme Court held that a district court may depart downward from the applicable Guidelines range whenever a mitigating factor or combination of mitigating factors, not adequately taken into consideration by the Sentencing Commission, pertaining to the offense and/or the defendant takes the case outside the "heartland" of ordinary cases.  Koon, 518 U.S. at 92; United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996)

# VENABLE LLP

May 12, 2008
Page 27

(district court may downwardly depart when a number of factors take a case outside the heartland, even if when considered individually they would not permit a downward departure).

Both extraordinary family circumstances and good works and commitment to the community – alone and in combination – are well established grounds for a departure. See, e.g., United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997) (family circumstances); United States v. Alba, 933 F.2d 1117, 1121 (2d Cir. 1991) (same); United States v. Ayala, 75 F. Supp. 2d 126, 137 (S.D.N.Y. 1999) (same); United States v. Canova, 412 F.3d 331, 359 (2d Cir. 2005) (good works); United States v Adler, 52 F.3d 20, 23 (2d Cir. 1995) (combination of good works and family circumstances).

In Ayala, for example, the district court granted an eight level family circumstances downward departure where the defendant was convicted of participating in a RICO narcotics enterprise. Ayala, 75 F.Supp.2d at 127. Noting that family circumstances departures are warranted where "the defendant is a unique source of financial and/or emotional support" for his family (citing, inter alia, Galante, 111 F.3d at 1037), the court stated that a sentence within the Guideline range would destroy an otherwise viable family unit. Ayala, 65 F. Supp.2d at 137-38. In granting the departure, the court pointed to, among other things, that Ayala is a hard worker, he had his first child at 17 and supports that child and one other, who has Down's syndrome, that Ayala cares for his drug addicted mother who otherwise lives on public assistance, that his common law wife is on public assistance and that his upbringing in a drug infested neighborhood by addicted parents was "onerous." Ayala, 75 F.Supp.2d at 138-39. The Court also noted that Ayala's non-disabled 4 year old had a statistically greater chance of landing in prison if deprived

# VENABLE LLP

May 12, 2008
Page 28

of a father during childhood.  Ayala, 75 F.Supp.2d at 139, citing *Fox Butterworth, As Inmate Population Grows, So Does a Focus on Children, N.Y. Times* (the Ayala decision provides no more specific citation); see also G alante, 111 F.3d at 1032 (upholding departure based on defendant's 10 year marriage, his two children ages 8 and 9, the family's financial difficulties and that the defendant was the primary breadwinner); United States v. Alba, 933 F.2d 1117, 1121 (2d Cir. 1991) (affirming departure for, among other grounds, family circumstances where defendant was married for 12 years, he had two daughters 12 and 11, he lived with his disabled father and elderly grandmother, he had longstanding employment and his was a close-knit family whose stability depended on the defendant's continued presence).

Turning to good works, in Canova, the defendant's downward departure was upheld based upon military and volunteer service that occurred over twenty years prior to sentencing, as well as "more recent incidents [that] demonstrated [the defendant's] commitment to helping persons in distress was an instinctive part of his character." Canova, 412 F.3d at 359. These incidents include administering CPR to an elderly man in a theme park and a priest on a bus, as well as assisting a woman who fainted in a street. Id.; see also Adler, 52 F.3d at 23 (court's decision to render a split sentence was upheld as a permissible downward departure where the record indicated both an unusual record of community service as well as family circumstances).

Along the same lines, having contributed to the community through a sterling work history, in combination with other factors, has also warranted a downward departure. See, e.g., United States v. Somerstein, 20 F. Supp. 2d 454, 463-64 (E.D.N.Y. 1998) (charitable efforts, exceptional work history and survival of the Holocaust); see also, e.g., United States v. Big



May 12, 2008
Page 29

Crow, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (upholding a downward departure based upon a defendant's lack of prior criminal record, excellent employment history, legacy of giving back to the community and consistent efforts to overcome adverse living conditions).

The bases supporting a downward departure as part of the Guideline analysis is laid out in detail above and in the many letters attached hereto. And, while every determination of extraordinariness must be driven by the facts and circumstances of the particular case at hand, it nevertheless bears noting that like Ayala, Mr. Dede has kept a coherent family unit together. Like Ayala, Galante and the defendant in Alba, he has a stable marriage. And like Ayala, he has an addicted parent on public assistance who relies on him heavily, as did the defendant's father in Alba. Also like Ayala, Mr. Dede navigated a difficult upbringing by two addicted parents in a tough neighborhood. While Mr. Dede's wife, Ms. Diaz, has a good job, she will nevertheless be providing for four children both financially and emotionally – their two children KD and MAD, and Mr. Dede's children from a prior marriage, MD and CD, whose mother is on public assistance and suffers from sever emotional problems – on one income and without Mr. Dede's emotional support. Indeed, MD and CD, who lived with Ms. Diaz and Mr. Dede, relied almost exclusively on their father for guidance and financial and emotional support. KD, the 3 year old, feels his absence keenly and faces the difficulty of at least a portion of his childhood without a father, as does his infant sister, MAD. Unlike Ayala and Galante, but similar to the defendant in Alba, Mr. Dede's extended family relies on him as well, not only for guidance and assistance, as the many letters discuss, but also as the linchpin that holds them together, especially after the

VENABLE*LLP

May 12, 2008
Page 30

death of his mother.   Mr. Dede also, and to a greater extent than Ayala, has had a truly

exemplary employment record. [4]

Furthermore, like Canova, assisting others is "an instinctive part of [Mr. Dede's]

character".  Canova, 412 F.3d at 359.  As so many of the letters make clear, Mr. Dede has a

lifelong history of good works.   He has put himself in physical danger to save the life of a co-

worker, he has performed many other acts of kindness great and small like cleaning the garage of

an elderly person in his neighborhood without even being asked, offering guidance and

assistance to many young people, who often do not have their fathers in their lives, running

errands and babysitting for the four children of a woman whose husband was on military duty in

Iraq, and comforting friends, family and neighbors in times of sorrow as well as simply lending a

hand to those who need help.  Mr. Dede has filled a lifetime with these acts of kindness, typically

without having been asked, without hesitation, without expectation of return, and often without

anyone other than the recipient knowing.   Indeed, Mr. Dede recently asked Ms. Diaz to place

money in the commissary account at MDC for two older inmates who cannot afford snack food

or other small luxuries that help make prison a little more tolerable.

For the reasons set forth immediately above and throughout this memorandum, Mr.

Dede's family circumstances, lifetime of contribution to his employers and numerous good works

are extraordinary.  But the Court need not find them so in order to sentence Mr. Dede to the 10

---

[4] The main purpose of a downward departure for family circumstances is for the benefit of the defendant's family to whom the defendant has demonstrated long term support, and not for the defendant himself.  See United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992); United States v. Londono, 76 F.3d 33, 36 (2d Cir. 1996).

# VENABLE®LLP

May 12, 2008
Page 31

year mandatory minimum, as Mr. Dede's personal history and characteristics when weighed

against the other § 3553(a) factors, as argued throughout, more than warrant such a sentence.

> 18 U.S.C. § 3553(a)(2):
> A Sentence of the Mandatory Minimum Is
> More Than Sufficient But Not Greater
> Than Necessary

In the final analysis, because of Mr. Dede's remarkable personal history and

characteristics as demonstrated by his extraordinary devotion to his family, their dependence on

him, his sterling work habits and lifetime of good works, a sentence of the 10 year mandatory

minimum is more than sufficient, but not greater than necessary, to satisfy the purposes of §

3553(a)(2). See, e.g., Kimbrough, ___ U.S. at ___, 128 S. Ct at 575 (sentence of mandatory

minimum sufficient but not greater than necessary).

The purposes of § 3553(a)(2), as noted above, reflect the traditional sentencing concerns

of deterrence (general and specific), incapacitation and rehabilitation. For a man as dedicated to

his family as Mr. Dede, 10 years in prison is an enormous personal deterrent, and for a man as

well known and respected by his friends, employers and neighbors as Mr. Dede, a 10 year

sentence is a chilling deterrent to the community at large. For the same reason that no greater

deterrent is needed than the 10 year mandatory minimum sentence, no greater period of

incapacitation is needed to protect the community.

Section 3553(a)(2)(D) refers to the need for education or vocational training, medical

care or other correctional treatment, all notions consistent with rehabilitation. As we noted at the



May 12, 2008
Page 32

beginning of this memorandum, one of the paramount goals of the corrections systems is to ensure that those leaving the system have a stable life through a stable home environment and stable employment. Mr. Dede currently has that stability through a loving immediate and extended family, many loyal friends and former employers who will re-hire him immediately upon his release. All of that will probably be there in 10 years time. Mr. Dede will be 44 and well poised to resume a productive life. Too lengthy a sentence could take all of that away. See United States v. Castillo, No. 03-Cr 835, 2007 WL 582749 at *8 (S.D.N.Y. Feb. 26, 2007) (overly long prison sentence could be counter-productive to rehabilitation).

As such, and for all of the reasons set forth above, Mr. Dede respectfully requests the mandatory minimum sentence of 10 years.

Respectfully submitted,

By:  William H. Devaney (WD-0563)
Liam C. Ewing (LE-3781)
Venable LLP
1270 Avenue of the Americas
25th Floor
New York, NY 10020
Counsel to Michael Dede

cc:    Todd Blanche, Esq.
John Hillebrecht, Esq.
Assistant United States Attorneys

# EXHIBIT A



*Our Lady of Good Counsel Parish*

April 17, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:     <u>United States v. Michael Dede,</u> Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan,

My name is Fr. John Dello Russo, O.S.A. I am writing you in support of Michael Dede in his upcoming sentencing. I am presently the pastor of Our Lady of Good Counsel Parish, Staten Island New York. Michael was a member of Saint Nicholas of Tolentine, Bronx, New York, the former parish where I served.

I first met Michael in 2002. Although he did not live within the boundaries of our parish he participated in church services at Tolentine. He and his wife Cynthia came to speak with me about celebrating their marriage in our church. In the course of our conversation I learned that Michael had not yet received his Communion and Confirmation. He entered into our RCIA program, the preparation of adults for the Sacraments. The purpose of this process is to help the adult enter into a deeper relationship with God, develop an adult understanding of their faith and help the person grow in the Christian life. Michael was very faithful to the classes, celebrations of Mass and the entire process. He received the sacraments of Communion and Confirmation on April 11, 2004.

In addition to this preparation, I had the privilege of preparing Michael and Cynthia for their marriage. They participated in six sessions with me discussing the various facets of married life (family history, communication, parenting, work, finances) and the connection between their faith and their marriage. They celebrated their marriage on September 5, 2005 and, though we have been out of touch since my transfer from the Bronx in 2006, I believe that he and Cynthia have tried to live a good, faithful marriage and create a good home for their children.   In addition, I met with Michael on several occasions when his mother became ill. He would come and talk with me both when she was ill and after she died.

*Staten Island, New York 10304*

Although Michael grew up in a rough neighborhood I believe he led a good life.  He always struck me as a man of principle and character who wanted the best for himself and for his family.  He worked hard to provide for his family.

I understand that Michael has been convicted after a jury trial of a felony narcotics charge.  I hope that this letter will help you to know Michael better and that you will take this letter into consideration in sentencing Michael.

Thank you very much for your consideration of this letter.  If you should need any additional information please do not hesitate to contact me.

Respectfully submitted,

Fr. John F. Dello Russo, O.S.A.
Pastor

# EXHIBIT B

Maribel Figueroa

Bronx, New York 10468

March 1, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:    *United States v. Michael Dede*, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

I, Maribel Figueroa am writing this letter on behalf of my younger brother
Michael James Dede. My brother has always played an important role in my life, as I
have played in his. Michael and I have been through more life changing events and
situations in the past few years than the average brother and sister. Yet, through it all we
have supported each other and I am proudly writing this letter to show that I will always
support him.

I understand that my brother Michael was found guilty after a jury trial of a felony
narcotics charge.

Having my brother away from me and my family has had a very serious effect on
me both physically and emotionally. I am deeply saddened by the chain of events that
have taken place. It feels like a bad dream but I wake up each day to the reality of the
situation that my brother and I are facing. It seems as if it was just yesterday that we
were laughing and joking at family events and functions, reminiscing about the good
times and looking forward for all those to come (particularly with Michael around).
Everyday without my brother by my side is a struggle. Just thinking back to the things
we have been through together sometimes makes it impossible to imagine not having him
around.

I have a special bond with my brother that goes beyond any sibling relationship
because I have raised him along with my husband. I taught my brother many things like
tying his shoes, brushing his teeth and how to be a responsible adult. I had a direct hand
in shaping my brother into the man he is today, and I take great pride in knowing this.
Michael is a very important person in my life and being without him for the past month
has been killing me inside. My brother Michael goes beyond the call of duty when it
comes to being a father, a brother, a son, an uncle and a husband. His incarceration will
not only leave mental scars on my children and me but it will leave scars on his four

beautiful children as well. I can see the hurt in his two older children's eyes as I try to reason and explain to them why things happen the way that they do, especially when I do not have the answers myself. His incarceration will also leave his wife with the difficult task of not only having to wipe the tears away from their youngest son's eyes but with the complicated task of having to fill a void of only which my brother can fill.

I beg of you to please take my letter into consideration when sentencing my little brother Michael James Dede.

Respectfully submitted,

Maribel Figueroa

# EXHIBIT C

Maria Torres

Yonkers, New York 10705

April 15, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:  *United States v. Michael Dede*, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is Maria Torres and I am Michael Dede's sister.  I am a pre-school teacher at
Concourse House, which is located in the Bronx.  I am writing this letter to you in support of my
brother's upcoming sentencing by requesting a lenient sentence.

I am aware that Michael has been convicted of a felony narcotics charge.

I have watched my loving brother grow into a loving man.  He is also a caring and
compassionate father to his four children, which includes a newborn that has come into this
world fairly recently.  He has a wonderful wife.  You can honestly see that she is very
passionate, as we all are, to lead the fight for Michael's sentence to be a lenient one.

Michael demonstrated his desire to help out the community at a very young age.  I can
remember my brother running downstairs every Saturday and Sunday to wait for the sanitation
truck.  He would actually help the workers move the garbage from the buildings into the
sanitation truck.  Although we found this very funny at t he time, this was his way of showing
that he wanted to help out his community, as well as his family. Michael has worked so hard to
better his life.  He had recently successfully passed the Con Edison examination.  He was on his
way to a long-term career with Con Edison.  Michael has persevered to do better and achieve all
that he could possibly achieve not just for himself, but for his family as well.  He is the strongest
unit of our family and in my eyes he is a wonderful brother.

Please take my letter into consideration when evaluating my brother's sentence.

Respectfully submitted,

*Maria Torres.*
Maria Torres

# EXHIBIT D

James Dede

Bronx, New York 10458

April 8, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:    United States v. Michael Dede, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is James Dede and I am Michael Dede's father. I have been diagnosed with a heart condition and am currently collecting social security.

It is my understanding that Michael Dede was convicted after a jury trial of a felony narcotics charge. I know this because I was present at his trial every single day. I am writing this letter to try to explain to you who my son is and to ask that you please take this letter into account when deciding my son's future.

Michael is the eldest of my two biological sons. I also raised Michael's two sisters, Maria and Maribel, and his older brother Carlos. My wife passed away on June 27, 2003 of stomach cancer and cirrhosis of the liver. I have since assumed the role of a single parent to my five children. Although they are adults, we are always together and remain a close knit family. Michael has always been by my side, helping me to maintain the family together. Although he has an older brother, it has always been Michael who takes charge of organizing family events and helping to keep the family together. My son has always been the strength of our family. Life for our family has not been the same since Michael has left.

Since he was a little boy, Michael was very family oriented and a very hard worker. At the age of twelve, he would run downstairs early weekend mornings to help the neighborhood garbage haulers. He told us he felt bad that they had to come clean up the streets so early. I also have fond memories of having Michael help me fix a car at the age of 9. Surprisingly, it all came so natural to him. I was convinced he would be a mechanic. Since then he's been fixing cars for family and friends as a hobby.

Michael's sense of hard work and dedication was developed at a very young age. He had his first child when he was only seventeen. However, he always took care of his responsibilities and always did his best to provide for his child, even when he himself was a child. He has remained an active part of his two teenaged children although he has started a new family with his current wife. He also has two younger children, ages three and-a-half and seven months.

Michael has made me very proud to be his father. He was married to Cynthia in 2005 and has demonstrated that the favorable qualities that his mother and I displayed were most definitely assumed by him. Michael stopped being our child and assumed the role of caregiver for both my

wife and I over ten years ago. We both struggled with alcoholism and Michael always made sure he was involved in our daily lives. In addition to his own responsibilities, he assumed ours as well. We relied on him to take us to our doctor's appointments, run our errands and obtain groceries. He even made sure that we were maintaining a clean and habitable home. A normal day included a phone call from Michael to ask how we were doing, did we eat, did we need anything, and to tell us he loved us. When his mother passed, Michael took it very hard. However, this only gave him more strength and determination to keep our family united. Since the core our family had been removed, Michael made his number one priority to find ways to keep five distinct new families together. He has been very successful.

I am very proud of my son and his choices in life, family and career. There is no doubt in my mind that my son is an asset to our community, our family and to the new generation. With ten nieces and nephews, and four great nieces and nephews, Michael has always found a way to make each and every one feel special and unique. At times we refer to him as the preacher because he spends his days preaching to any kid that would listen about the importance of school, family and attainable goals. There is no life that goes untouched by Michael if it is within his reach.

I hope and pray that you will please take what I have told you into consideration when sentencing my son.

Respectfully submitted,

James Dede

# EXHIBIT E

Maria Diaz

Bronx, New York 10468

March 30, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:    *United States v. Michael Dede*, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is Maria Diaz and I am Michael Dede's Mother-in-law. I have also been Michael and my daughter's babysitter since January 2006. Prior to then, I was a child care provider for an agency named Hudson Valley Mother Goose for over five years. I have known Michael since about 1990. He dated my daughter while she was in High School and then they began dating again in 2000. I am writing this letter in support of Michael in his upcoming sentencing.

I am very well aware that that Michael was convicted after a jury trial of a felony narcotics charge. I am writing this letter in hopes that you may take it into consideration.

The first thing that comes to mind whenever I think of Michael is his thoughtfulness. Michael is someone that everyone feels lucky to have in theirs lives because you can always count on him when you need him. Ever since the first time I met Michael, the one thought that stuck with me was how helpful and thoughtful he was. I remember meeting him for the first time and he was in dirty clothes. I asked if he had just come out of work because it was a weekend day. He stated that he was helping one of the older guys on his block to clean out his garage because the man's own son was too busy to help him. The man had mentioned it to Michael's father and once his father told Michael, he went right over to help him. Michael has always been very helpful and thoughtful with me and my younger daughter. There was one time when my landlord refused to paint my apartment. I kept complaining about it and Michael told me not to worry. He told me to ask the landlord to purchase the paint and that we would do it ourselves. When my daughter went away to take a class for her MBA, Michael would come out of work and come straight to my house to paint. We'd work up until almost midnight. Since my daughter wasn't home, he felt this was the best time to take care of two situations at hand. He could help us out with painting and it wouldn't take away from his time with his family.

The next thing that comes to mind when I think of Michael is his dedication and devotion to his family. Michael has proven to be an amazing father, husband and ultimately a son. I have a twenty-one year old daughter named Priscilla and her father does not play an active role in her life. Since the day Michael began dating my daughter Cynthia, he has taken on an active role in my daughter Priscilla's life. He has always gave her great advise and has been a part of every exciting milestone she has reached. There was a time when she was receiving an award in High School and neither Cynthia nor I could take off. Michael was there to show Priscilla support and represented the sheer pride we all felt for her success. He has represented the father in her life and has walked her through the paths that a father normally guides her young daughter through. From teaching her to drive and purchasing her first second-hand car, through the talks of boys and relationships, Michael has been there for her. I am very lucky to have him in our lives to complete that circle that remain incomplete until the day her entered our lives. He has proven to be a great husband to my daughter and a fabulous father to my grandchildren. As a mother, one only hopes for the best man to help her daughter attain the greatest love of life. I no longer hope for Cynthia because I know she has found that. He is one in a million. He is not only a great family man with my daughter and their kids but also with his own children and family. We have become one big happy family because of him. His ultimate goal has always been to unite everyone into a great big happy family and he has accomplished that. I feel very lucky that my girls, my grandchildren and I have become part of this bigger circle of love and togetherness. Unfortunately, Michael has been faced with a terrible situation and the thought of his incarceration can only bring visions of sadness and heartbreak to my mind. I pray everyday that Michael's time away from his family is kept to a minimum.

I ask that you please take my letter into consideration when sentencing Michael. Thank you for your time and consideration.

Respectfully submitted,

*Maria Diaz*

Maria Diaz

# EXHIBIT F

Cynthia Diaz

Yonkers, New York 10704

March 26, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

      Re:    *United States v. Michael Dede*, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

      My name is Cynthia Diaz and I am Michael Dede's wife. We were married on September 5, 2005. We have known each other since we were teenagers – over fifteen years. Currently, I am a Controller at a large commercial real estate firm in New York City. I have been working there for two years. Prior to this, I was employed by a private residential real estate firm for eleven years. I am writing to you in support of Michael for his upcoming sentencing.

      Michael is a superb husband, father, son, uncle, and friend. He is known by many, many people as a positive and uplifting influence and an outstanding member of our community. He is not selfish nor is he self-centered. He helps everyone. Michael is a very hard worker. He began working at a very young age and has always maintained legitimate employment. I remember referring to him back in the 90's as the stock boy from our local Food City supermarket. Upon his arrest, he was suspended from his job at Con Edison of New York. He worked diligently for over a year to obtain that job. Although he was devastated about being suspended and very concerned with the case at hand, he went out and worked even harder to obtain another job so that he could continue to help contribute to his family's financial responsibilities. He found employment shortly after his suspension and remained employed until two weeks before his trial. That is Michael: a determined and very hard working family man.

      Michael has two teenage children from a previous relationship and we have two children. MD Jr. is seventeen, Crystal is fifteen, XD is almost three-and-a-half and MD is six months old. Michael plays a very active role in all four of his children's lives. He spends a lot of time with each of them and makes sure that they each feel special. My three-year-old son is having a very hard time every evening when his father does not come home. Michael would always put

him to bed, give him chocolate milk and read him a bedtime story. He was also very good with our newborn baby. He taught the rest of us how to burp her the way she liked since we were all having some difficulty. Michael's teenage children are at peak points in their lives and are having a real hard time not having him there to see them through this time. He has taught them to live by sound morals and be the best they can possibly be at anything they attempt. He has always tried to set a great example for them. Michael returned to school to obtain his GED after he was almost thirty, in an effort to show our children that an education and hard work is priceless. He is our children's provider – mentally, physically, and financially. He is their friend and their confidant.

Michael is also a wonderful husband. He is my partner and my best friend. We take care of everything together. We raise the children together, we run errands together, we wash clothes together, we clean the house together; we do it all together. I miss him tremendously and I can't imagine how I will do this by myself. Prior to my relationship with Michael, I was in a relationship for over ten years. I never got married or had children then. I was raised without my father and I knew how difficult it always was for my mother and how sad I was not to have a father in my life. I always knew I wanted to find the right man for that part of my life and I found it when I married Michael. Within a three year span, we had children and were married and I have no regrets. He is perfect. He is the core of our entire family; the one that plans summer barbeques, Christmas gatherings, visits to his mother's gravesite, and many other opportunities to bring our families together – especially after his mother's death. Family is very important to him. Our families are very close and are always together. My mother and his father both have heart conditions. Michael and I are their support and their caregivers. They are always with us. We leased an eight passenger vehicle so that we would have room for them and our children when traveling. Michael is our foundation. His incarceration has been detrimental to our family. He has spent the majority of his adult life working hard to secure a happy and healthy future for our family. I ask that you please try to get to know him through the words of the people that have spent the last thirty plus years around him.

I beg you to please take my letter and the other letters submitted by our families and friends into consideration when sentencing Michael. He will never disappoint you. He is a very good man and a valuable person in our society. He has the ability to help cultivate our youth and prepare them for the future. His incarceration for years would crumble a lifetime of his hard work and dedication to his own personal growth and to his family. Thank you for taking the time to read this letter and for allowing me the opportunity to introduce you to the Michael Dede I married.

Respectfully submitted,

Cynthia Diaz

# EXHIBIT G

$M D$

Yonkers, New York 10704

March 23, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

     Re:   _United States v. Michael Dede_, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

     My name is     $M D$     . and I am Michael Dede's son. I am a seventeen year old High School student. He has been a part of my life since the day I was born. I am writing this letter to you in support of my father for his upcoming sentencing.

     I understand that my father was convicted of one felony count of conspiracy to distribute narcotics and I am writing to ask that you give him the least sentence possible.

     Although my father was very young when I was born, he has always taken care of me. I am his oldest child and I am proud to be walking in his footsteps. I have learned that the reason he set rules and pushes us the way that he does is because he wants the best for us. He took me to live with him so that he could monitor my school work and help guide me through my High School years. We often discussed college and career goals. Whenever I start to veer off track, I remember that he always said, "You have a choice: you can make money using your physical abilities like me or you can make money using your brain and not get your fingernails dirty". His primary concern over my sister and me, beside the basic necessities, has always been our studies so that we can have an easier life in the future. Even now, every single letter he has written us has told us to focus and do well in school. We know this is what we need to do to make him a very happy father.

     It is really sad that although my dad has worked so hard to make me realize the importance of school and college, that he is missing out on the entire process. I will be graduating High School in June. The senior trip, senior pictures, awards ceremonies, graduation are all events that I know he would have been on the front line helping me prepare for and he is missing it. It will be devastating if my father could not attend one

of the most important events in my life. It's hard for me to feel happy about these things. It hurts so bad that I am actively applying to colleges and that he is unable to take part in this. One of my goals is to become an Orthodontist. I want and need his help in choosing among different options, such as locations (my dad is known as the human map quest) and deciding whether to board or commute, but I can't do this. I don't want to ask him his advice via letters or waste the only hour we get to see him discussing the distance of difference schools. Our plan was always to spend weekends visiting colleges together so that we could choose the best school.

It makes me very sad that he is missing many important things in our lives. My father taught me how to drive and took me to get my drivers' permit. He was so excited when I passed that he let me drive him around the entire weekend. He was in the process of teaching me to drive standard. We were just about to set things up for my road test, when this all happened. I had to do those things on my own and even when I passed the road test, it wasn't the happiest moment ever because he was not standing there waiting for me to get back during the test, like I know he would have been.

As hard as this has been on me, I can't help but think and worry about how hard it has been on my younger sisters and my little brother ☺. I find myself constantly thinking about their well being and their pain. We always joked about me being the next person in control over the family, but this is no laughing matter and I do not look forward to that responsibility. I am even more impressed by my father after having felt like I had to take on these responsibilities, after only two months. I don't know how he does it but he does a great job. We each feel loved and protected and no one feels left out. We are each equally important to him. He is truly the best!

I really, really miss him and want him back in my life. I need him back in my life. He is my guidance and my best friend. These last two months have been the longest of my entire life. I have heard many people talk about how rough it is not having a father and I have always felt lucky to have mine. My father has struggled his entire life to make sure our family was comfortable. Breaking up our family will be very painful to us. I am at a very important stage in my life and who would teach me to be a man better than my dad? Who would teach me to fix my car when it breaks down? Who will help me build my own dentistry office when I start my own business? What I am trying to say is that I need him in my life and I love him very much. Please, please take this letter into consideration when sentencing my father.

Respectfully submitted,

MD

# EXHIBIT H

C D

Yonkers, New York 10704

March 30, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:   *United States v. Michael Dede*, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is   C D   and I am Michael Dede's daughter.  My father has been in my life since I was born.  I am writing this letter to you in support of my father for his upcoming sentencing.

I understand that my father was convicted of one felony count of conspiracy to distribute narcotics.

My dad is the world's greatest father!  He works hard for his family and he has done nothing but care for my brothers, my baby sister and I, helping to prepare us for the future.  Ever since my father has been in jail, I've been feeling empty.  Every time I had a problem, I would ask my dad for advice and his advice was always to do what was right.  I could talk to him about anything that was going on in my life.  My father's first priority was always to make sure my brother Michael and I did great in school.  He always went to our parent-teacher conferences.  He always checked our books to make sure we were doing our assignments and kept neat notebooks.  My father raised me very well.  I have several friends that do not have their fathers.  I have always felt lucky to have him in my life everyday.  It hurts me so much not to be able to hug him and spend time with him.  I always made sure my homework was done, that my books were ready for him to review, that I was showered, and that my clothes were ready for the next day before came home from work.  This way, I could spend time with him, my step-mom and my siblings.  This is what we did every night.  We got ready for school and work and we spent time together.  We always had dinner together and a snack before bed.  On the weekends, my father was the breakfast chef and his food was always very good.  I looked forward to Saturday and Sunday mornings!  Everyday was a great day.

I feel that now is a very important time in our lives when we need our father the most, especially my three year old brother K.D.  He is about to start school for the first time and that is something we all look forward to. My step mom and dad worked real hard to make sure he was ready for pre-kindergarten. He has also been having nightmares ever since my dad went away. My step mom and I try to sleep with him often so that he can be comforted. He always waited for my father by the door because he knew that my dad came home from work in the evening. It has been very hard to see the look of disappointment on his face when he asks, "When is daddy coming home?", and we have to say that he had to go away. Also, I just started High School and my brother Michael is about to graduate from High School. We pray that he will not miss his graduation. My dad has put so much effort in helping us achieve these goals and to see us get where we are today. It is killing us that he is not here to enjoy what he helped us to achieve. I just had a parent-teacher conference and missed him running home from work to shower and change so that we could make it in time. It was always very funny.

My baby sister also needs her father. We were very fortunate to have him in our lives when we were babies and we'd love to see her have the same advantage. My father would always feed and burp her. He was the only one that knew just how to get her to sleep when she was having trouble. It has been very hard for her to adapt without him at bedtime. It makes me so sad to think that when she gets older, she might ask where her daddy is. I try to imagine what I could tell her so that she wouldn't feel like she missed out on what we had. We have so many pictures with him throughout our lives and at our special events. I can't imagine her looking through our family pictures and realizing that he is not there for her special moments too. My father is a very good person. The day after he came home from jail in August, he helped to prepare for my step mom's baby shower. He was so concerned about ruining one of the happiest moments in their lives, even though he was going through one of the most horrible events in his own life. I can not believe this is happening to him or us. I have just one big wish and that is to have my dad back home with us, in our everyday life. I really miss him and I think about him all the time.

I hope that you will take my letter into consideration when sentencing my father. He is very valuable to us and to our community. Please help us to get our family back together as soon as possible. Thank you.

Respectfully submitted,

C.D

# EXHIBIT I

Wanda Rodriguez

Bronx, New York 10468

March 27, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re: United States v. Michael Dede, Case No.: 07 Cr. 1015(LAK)

Dear Judge Kaplan:

My name is Wanda Rodriguez. I am a Child Care Provider. I know Michael Dede since he started his relationship with Cynthia Diaz. It has been about 8 years. I am writing this letter in support of Michael. He is a good man. I have always seen him doing the right thing for his kids or for anyone that needed help. He always watched over others kids in the neighborhood and always gave them good advice.

I do understand that he was convicted after a jury trial of a felony narcotics charge but I would like you to consider the following the day of his sentence.

Since the day I met Michael, I have never seen him do anything malicious or heard anyone say anything bad about him. On the contrary, if anyone needs any help he is always there. I have a daughter that has chronic asthma. One day he saw her with an asthma attack and he was very worried. He would not leave her side until he made sure that she was ok. After she used the nebulizer and her other medication, she felt better. He also felt better after he saw her doing better. He couldn't stop telling us to call him if she ever had an attack and needed to get to a hospital and/or needed medication. When I would see him with his wife and his children, he always looked like the happiest father in the whole world. For him, his family always comes first. He always makes sure that everyone is fine. This is very hard for his family, especially his two little ones. Kyle is only three years old and he already misses his Daddy. He is always asking for him. His six month old daughter's name is Mia. It is going to be hard for them not to have their Daddy like others kids. The relationship between his wife Cynthia and Michael is beautiful. They are always happy and are always with their kids every where they go. I know that if this family has to be permanently separated for a long time, their world will come apart. He lives for his family and his family lives for him.

I would like the court to consider this letter when sentencing Michael Dede. Please. I appreciate your consideration during this process from the bottom of my heart. Please do so for his kids and his family.  Thank you.

Respectfully submitted,

Wanda Rodriguez

# EXHIBIT J

Michele T. Soanes

Fresh Meadows, N.Y. 11365

April 25, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:    *United States v. Michael Dede*, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is Michele Soanes and I met Michael Dede in 2004 through his wife,
Cynthia Diaz. Cynthia and I met in graduate school at St. John's University, while we
were there completing our MBA. I have since become a friend of the Dede family and
participated in their wedding on September 5, 2005. I celebrated with them in 2004 and
2007 welcoming the birth of their children, KD and MD .

I was shocked to learn that Michael Dede was convicted of felony narcotics and
accordingly, I write this letter to ask for leniency.

Michael Dede is not from an economically privileged family, but he never let that
stop his resolve to become a contributing member of society. He is a hard worker and a
loving father and husband. He is present in his children's lives, determined to be a better
father than he had and be there for his children. It is a privilege to see the gleam in his
eyes as he rumbles on the floor with KD or tenderly feeds MD. He has gained the
respect and admiration of his peers and colleagues as he is such a supportive and giving
person. We are all devastated by the thought that Michael Dede will be separated from
his family who he loves so much and who depend on him for financial and emotional
support.

I understand that the system has spoken, but I ask that you take into consideration
Michael Dede's character and family and afford him as much leniency as is possible.

Respectfully submitted,

Michele T. Soanes

# EXHIBIT K

Laura Rodriguez

Bronx, New York 10468

March 27, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District Of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:      United States v. Michael Dede, case No: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is Laura Rodriguez.  I use to be a student at La Guardia Community College. I met Michael through his wife Cynthia and have known him for about eight years. I am writing this letter in support of Michael in his upcoming sentencing.

I understand that Michael was convicted after a jury trial of a felony narcotics charge but I would like you to consider my letter while deciding Michael's sentence.

Michael is a wonderful person and always helps anyone in need. The day I met Michael Dede, an instant friendship was born. He has always been a real friend and so has his wife Cynthia. Since I suffer from chronic asthma, he always asks me if I doing ok and tells me that if I need anything to please let him or his wife know. Whenever you need help, Michael is there to offer help.  He always makes sure that the kids in the neighborhood are doing the right thing and not getting in any trouble. At any given moment, you can hear Michael giving them the "do good in school" and "stay out of trouble" speeches.  I always see Michael together with his wife and their kids. They are so happy.  I look up to them and always referred to them when thinking about what I'd like my future family to be.  Michael loves his kids.  It breaks my heart to see his three year old son Kyle.  He misses his Dad very much. Since he doesn't see us everyday, whenever he sees us, the first thing he asks is where is his Daddy? It's almost like he wants to check with everyone to see if they know when he is coming home.  He also has a six month old daughter named Mia and two teenage kids from a prior relationship. He is great with all his children and even with kids that are not his own.  He always offers me advice about school, work and life in general.  Michael and Cynthia's marriage is one of the best that I know.  They really love each other. It is going to be hard for them and their kids to be separated for a long time. I wish I could tell you a lot more about Michael but I can't find the words. As a friend, as a husband and as a father, he is phenomenal.  It is very hard to find a person that is just like him.  I feel horrible for his family and I know that he miss them the same way they miss him.  We all miss him very much and look forward to seeing him again.

I ask that the court take my letter into consideration in sentencing Michael and I thank you for taking the time to read it.

Respectfully Submitted,

Laura Rodriguez

# EXHIBIT L

A.B.

Yonkers, New York 10705

April 15, 2008

The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re:     United States v. Michael Dede, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is     A.B.     and I am thirteen years old.  I am a student at St. Ann's
School which is located in the Bronx.  I am Michael Dede's niece.  I am writing this letter on
behalf of my dear uncle in reference to his sentencing hearing on May 23, 2008.

I understand that my uncle was incarcerated after his trial, so I am writing this letter to
request a lenient sentence for my uncle.

Michael has always been a great uncle to me.  He is always encouraging me to do well in
school. Even now that he is incarcerated, he writes to me tells me that I need to do well in school
because it is very important.  I miss him very, very much and I look forward to having him back
home real soon.

So please, when sentencing my uncle, please take my letter into consideration.

Respectfully submitted,

A.B.

# EXHIBIT M

Priscilla L. Diaz

Bronx, New York 10468


April 3, 2008


The Honorable Lewis A. Kaplan
United States Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007

Re: United States v. Michael Dede, Case No.: 07 Cr. 1015 (LAK)

Dear Judge Kaplan:

My name is Priscilla L. Diaz. I am Michael Dede's Sister-In-Law and I have known Michael Dede since I was a young girl. I have been a Chef for approximately six years and am currently working for Restaurant Associates, located in the Citigroup Corporation, for about two years. I am also a graduate of The Art Institute of New York City, where I obtained my Associates Degree in Culinary Arts and Restaurant Management.

I understand that Michael was convicted after a jury trial of a felony narcotics charge. It is not my intent to argue or dispute the conviction, but to respectfully request that the Court impose the most lenient sentence possible for Michael.

I have known Michael since I was very young. Originally, I knew him as one of the guys who was raised in our neighborhood. However, Michael always seemed to be very different from the other guys. He was always very respectful, funny, and helped out all the time, no matter who you were. As the years passed and my sister Cynthia Diaz and Michael began to date, I got to know him better and realized that he was also a great human being. As Michael became more involved in our lives, I thanked God. My Mother is a single parent and she raised my sister and me on her own. I never had a father figure in my life and that is the role that Michael assumed when he entered our family, a Father.

When my sister and Michael began dating, I was just entering High School. I began to get into trouble and I was not doing so well in school. Michael was there to teach me the importance of family, goals and an education. Even though he didn't finish

High School, he told me that he regretted it greatly and thought about it often. This gave him more reason to push pursuing an education. He told me he felt like a hypocrite preaching the importance of school when he had not finished. However, he promised me that was going to change. Soon after, he obtained his General Equivalency Diploma (GED). Michael is a wonderful person. Even though I was not his own child, he accepted me as if I were his own. He took me into his life and has always guided and protected me. He went to my parent-teacher conferences, he attended my award ceremony when no one else could take the day off from work and he even helped me get ready for my High School prom.

Even after High School, Michael continued to guide me in different aspects of life, teaching me the meaning of goals and hard work. As I became a young lady, he gave me advice and was there for me through heartbreaks, as well as in moments of joy. He taught me how to drive and was always there when I had trouble with my first car. I will never see Michael as just my brother-in-law, but also as my father. Michael has been there for me through good and bad times. He has enabled me to believe that I have the power to achieve many things in life and to understand that I have potential. He has shown me that 'he' is a true role model and that he has a lot of love to give. I can always count on him to steer me in the right direction. Michael is a wonderful human being and not having him around our family would destroy our lives. It hurts greatly to think that I would lose the one person who treated me like a daughter when I spent most of my life without a father.

I am hopeful that you will take my letter into consideration when sentencing Michael and that you give us the opportunity to regain our family. Thank you for taking the time to read this letter.

Respectfully submitted,

Priscilla L. Diaz