UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
UNITED STATES OF AMERICA,                :
:
      -against-                    :
:    07-cr-1015 (LAK)
MICHAEL DEDE,                            :
:
      Defendant.                    :
------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF MICHAEL
DEDE'S OBJECTION TO THE FINAL PSR AND IN RESPONSE
TO THE GOVERNMENT'S SENTENCING SUBMISSION**

**VENABLE LLP**

William H. Devaney (WD 0563)
Liam C. Ewing, Jr. (WE 3781)
Rockefeller Center
1270 Avenue of the Americas
25th Floor
New York, New York 10020
*Counsel for Michael Dede*

**VENABLE**®LLP

Rockefeller Center
1270 Avenue of the Americas
The Twenty-Fifth Floor
New York, New York 10020

Telephone 212-307-5500
Facsimile 212-307-5598

www.venable.com

May 19, 2008

**BY HAND DELIVERY**

Honorable Lewis A. Kaplan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, NY 10007

      Re:    United States v. Michael Dede
               07 Cr. 1015 (LAK)

Dear Judge Kaplan:

Please accept this letter brief in lieu of a more formal objection to the enhanced base offense level of 38 in the final Presentence Investigation Report ("PSR") dated May 16, 2008; in response to the Government's May 19, 2008 Sentencing Submission ("Government's Sentencing Submission"); and in further support of a sentence not exceeding the 10-year mandatory minimum.

    The Newly Enhanced Base Offense Level
    Is Based On The Non-Credible And
    Underlying Uncorroborated Testimony of One Cooperator

In the draft PSR, Probation initially calculated Mr. Dede's base offense level at 36 (188 to 235 months) based on 10 to 30 kilograms of heroin. Prodded by the Government's objection, Probation raised the offense level to 38 (235 to 293 months) in the final PSR (See PSR ¶¶ 7, 17-26; pp. 19, 21-22). The Government based its objection solely on Jose Cruz's testimony. Cruz's estimate of narcotics weight,

however, is uncorroborated in time frame and amount by his co-defendant Lester Farrell, and it is generally tainted by his overall unreliability and lack of credibility as demonstrated at trial. As such, the Court simply cannot rely upon Cruz's estimate of drug quantities.

The Government first elicited testimony from Cruz regarding his estimate of drug quantity supplied by Mr. Dede between 1999 and 2004, a time frame not found in the indictment, grand jury testimony or complaint. Cruz guessed that he received "20, 30 kilograms" during that period. (Tr. 86; see also PSR ¶ 7, fn1).[1]

The Government then asked Cruz about the quantity he received during the time frame actually alleged in the indictment, 2004 to August 2006:

> A.  Another 20 kilograms.
>
> Q.  How are you doing the math, sir?[2]
>
> A.  Around 600 grams a month, 600 to 800 grams a month.

(Tr. 86; see also PSR ¶ 7, fn1).

Adding these two time periods together, Probation came to a narcotics amount in excess of 30 kilograms.

Contrary to Probation's assertion (See PSR ¶ 7, fn1), however, Farrell does not corroborate Cruz's testimony on either the length of Mr. Dede's involvement in the conspiracy, nor weight. Nor does the Government claim that he does. (See Government's Sentencing Submission, p. 5). When testifying at Mr. Dede's trial, Farrell offered that he received "at least 500 grams" each time, with no specificity as to

---

[1] References to "Tr." are to the trial transcripts, dated February 13, 14, 19, 20 and 21, 2008.
[2] Cruz testifies that his calculation of total quantity is based on the amounts of heroin he sold each week on average. (Tr. 151). But Cruz also testified that other people regularly supplied him during the same time, such as Jimmy (Tr. 85, 108, 111), Julio (Tr. 111, 113), Pops (Tr. 90, 113) and Kenny (Tr. 90). It seems impossible that Cruz can accurately distinguish amounts given his numerous suppliers.

the regularity or total quantity over the life of the conspiracy. (Tr. 255).[3] Furthermore, Farrell states that although he [Farrell] began dealing heroin with Cruz in 1999 (Tr. 263), Mr. Dede became a source of supply for Cruz only sometime around 2004-2005 (Tr. 255).[4] This would result in a narcotics weight of less than 30 kilograms and roughly comports with Cruz's estimate of the 2004 to 2006 time frame. There was no other evidence of narcotics weight and, tellingly, it is the 2004 to August 2006 time frame that the Government chose to use in the complaint, the grand jury presentation and the indictment, and which Probation adopted, along with a level 36, in its draft PSR.

Furthermore, both Cruz and Farrell demonstrated a profound lack of credibility throughout the trial. As the Court will recall, Cruz was shown numerous letters he authored while in prison attempting to get anyone – the Government, friends, family, Mr. Dede – to help with bail. (See February 13-14 Trial Transcripts, passim; Trial Exhibits A through G). These letters illustrate Cruz's utter lack of credibility. For example, Cruz testified that he did not try to communicate with Farrell after his arrest (Tr. 155), but Mr. Cruz admits later in his testimony that he did in fact use Mr. Dede's brother, David Dede, and Farrell's girlfriend to attempt to communicate with Farrell. (Tr. 158-62). When asked if he was attempting in one of his letters to instruct Mr. Farrell about what to tell the authorities, Cruz at first denied that this was his intention,

---

[3] Farrell states in his January 5, 2007 proffer session that Mr. Dede supplied him and Cruz with "500 grams every three weeks" from 2004 until August 2006. 3502-I. This quantity would total approximately 21 kilograms over the course of the conspiracy.

[4] Nor do Cruz and Farrell agree on which one of them introduced Mr. Dede to the other for purposes of their heroin dealings. Cruz testified that Farrell "told me that the defendant gets heroin and he wanted to give him some." (Tr. 110). However, Farrell testified that Cruz "asked me if I knew if [Mr. Dede] could get him drugs and I was like, No. So he told me, yeah, that he could." (Tr. 254).

but then, when directed by the Court to answer the question, admitted that he told Farrell "not to tell the authorities anything." (Tr. 162-63).

There are numerous other examples of Cruz's lack of credibility. Cruz's letters from prison call his case a "bullshit case" (Tr. 166-67), and state that "this crime they are accusing me of, I didn't do." (Tr. 160). Indeed, in Cruz's letter to Mr. Dede in an attempt to manipulate Mr. Dede for bail, Cruz states, "I didn't do what they are accusing me of. This is bullshit." Cruz was asked if he considered himself family to Mr. Dede, to which Cruz testified, "No, we wasn't family. We are still not family. I know him for years like I know a lot of people for years." But when it was pointed out to Cruz that he said in his letter to Mr. Dede in the midst of asking for bail "We family, my dude", Cruz could only respond, "That is what it says." (Tr. 174-75). Clearly, Cruz will say whatever he believes is in his best interest at any given point in time. Adding to this lack of credibility are the inconsistencies between Cruz and Farrell's testimony, some of which are discussed above. And, importantly, that Farrell, with whom Cruz was obviously trying to communicate, did not implicate Mr. Dede until his fourth proffer session, <u>after</u> Cruz, who vociferously had been claiming his innocence, implicated Mr. Dede, deeply cuts into the credibility of both witnesses.

Indeed, the jury, which heard less than two days of testimony but deliberated for almost three days through four deadlock notes, likely had problems with Cruz's and Farrell's credibility. There was little other evidence offered at trial. The jury's verdict was limited to a finding of only more than one kilogram of heroin. Given the credibility issues with Cruz and Farrell, we respectfully submit that the Court should not credit the cooperator testimony beyond the jury verdict of more than one kilogram,

making the base offense level 32 (121 to 151 months). At worst, as laid out above, the Court should not go above a level 36 (188 to 235 months).

The Government's Argument Wrongly Implies
That Non-Guideline Sentences Are Inappropriate
<u>In Narcotics Cases Where The Defendant Goes To Trial</u>

The thrust of the Government's Sentencing Submission is that Mr. Dede is undeserving of a non-Guidelines sentence because he failed to accept responsibility and instead chose to go to trial, and that such sentences should not be handed down in narcotics cases, at least where the defendant has not pled guilty. (<u>See</u> Government's Sentencing Submission, pp. 7, 11). The Government's position, however, does not correctly take into account the operation of the Guidelines or 18 U.S.C. § 3553(a), and it utterly dismisses Mr. Dede's unquestionably remarkable personal history and characteristics.

First, to the extent the Court considers the Guidelines as part of its § 3553(a) analysis, they already take into account the failure of a defendant to accept responsibility, typically when the defendant invokes his right to a trial, by operation of U.S.S.G. § 3E1.1. Under that section, three points are deducted for timely acceptance of responsibility. In this case, a § 3E1.1 reduction would reduce a base offense level of 38 to a level 35 (151 to 188 months), a base offense level of 36 to a level 33 (135 to 168 months) or a base offense level of 32 to below the mandatory minimum. As such, Mr. Dede's decision to proceed to trial is already factored into the § 3553(a) analysis as it creates a significantly higher Guidelines sentencing level by several years.

Furthermore, contrary to the tenor of the Government's argument, non-Guideline sentences, whether via § 3553(a) or a departure, routinely apply to those who go to

trial. See, e.g., United States v. Hunter, 05-6948-Cr., 2008 WL 1711271 at *1 (Summary Order) (2d Cir. April 11, 2008) (defendant convicted of conspiracy to distribute narcotics following a jury trial received a non-Guidelines sentence); United States v. Florez, 447 F.3d 145, 148-149 (2d Cir. 2006) (non-Guidelines sentence after conviction for heroin conspiracy); United States v. Milikowski, 65 F.3d 4 (2d Cir. 1995) (defendant convicted following jury trial received downward departure from the then mandatory Guidelines).

The Government also appears to suggest that a non-Guidelines departure should not apply in a narcotics case. (See Government's Sentencing Submission, pp. 9-10). However, non-Guidelines sentences and departures are routinely applied to cases involving narcotics defendants, including those persons deemed suppliers. See, e.g., Kimbrough v. United States, __ U.S. __, 128 S. Ct. 558 (2007) (defendant found guilty of narcotics conspiracy sentenced to below Guidelines term of imprisonment); Florez, 447 F.3d at 149 (same); Hunter, 2008 WL 1711271 at *1 (same).

Additionally, the Government's lengthy argument that the Guidelines represent a collective wisdom and essentially take into account all of the § 3553(a) factors (See Government's Sentencing Submission, pp. 8-9) seems to vault the Guidelines into a position of paramount importance at the expense of the rest of § 3553(a), especially those factors focusing on the individual as opposed to merely the offense. Recent precedent, however, makes clear that the Guidelines are but one of many factors and not automatically more important or worthy of any more weight or consideration than any of the other factors. See Gall v. United States, __ U.S. __, 128 S. Ct. 586, 596-97 (2007) (Guidelines are not the only factor; district judge should consider all of the §

3553(a) factors); Kimbrough, 128 S. Ct. at 570 (while a court is to give respectful consideration to the Guidelines, Booker "permits the Court to tailor the sentence in light of other [§ 3553(a)] statutory concerns as well.", citing United States v. Booker, 543 U.S. 220, 245-46 (2005); Florez, 447 F.3d at 158 (weight to be given any § 3553(a) factor is firmly within the discretion of the sentencing judge). In propounding the argument that the Guidelines are paramount, the Government also fails to take into consideration the clear mandate that the sentencing court must not assume that the Guidelines are reasonable, but must make an individualized determination based on the facts presented. Gall, __ U.S. at __, 128 S. Ct. at 596-97.

Without going into detail here as in Mr. Dede's sentencing memorandum, it is clear that in such a framework, Mr. Dede's life history warrants a non-Guidelines sentence at the 10-year mandatory minimum. As argued in his sentencing memorandum, Mr. Dede has a long history as the core of his family. He helped provide for his wife and four children by working hard labor jobs, often two or more simultaneously. He has also provided for them emotionally and intellectually, keeping his family together in the face of addiction and death, and playing an active role in his children's education. His four children, at various stages of childhood from infancy to age 17, depend on him and deeply feel his absence, as does his wife, Cynthia Diaz, who is left to care for them alone. As the many letters from extended family also indicate, Mr. Dede is the heart and soul of his extended family as well.

Mr. Dede has also made it a life-long habit to help those in his community, from saving a man's life at work to providing regular assistance to a woman and her four children whose husband and father was on military duty in Iraq. And these are only

two of the dozens of acts of extraordinary kindness detailed in the dozens of letters submitted on behalf of Mr. Dede.[5]

The Government argues that the crime for which he was convicted washes all of this away. It cannot. In the final analysis, the Court must take the measure of the man before it. When that is done, we respectfully submit that a sentence of ten years is more than sufficient, but not greater than necessary to satisfy § 3553(a).

Respectfully submitted,

William H. Devaney (WD 0563)
Liam C. Ewing, Jr. (LE 3781)

Cc: Todd Blanche, Esq. (via ECF and email)
John Hillebrecht, Esq. (via ECF and email)
Assistant United States Attorneys

James Mullen (via email)
U.S. Probation Officer

---

[5] The Government fails to address any of the case law cited in Mr. Dede's sentencing memorandum in support of a downward departure when determining the Guidelines range for a § 3553(a) analysis and only glancingly touches on the argument that Mr. Dede's life works are extraordinary. Indeed, the Government seems to simply state in conclusory terms, with no case law or other support, that Mr. Dede's service to family, service to others in the community, and his hard work, along with his ability to easily rejoin the community with legitimate employment and a stable family situation, are not factors that warrant a non-Guidelines sentence or downward departure. (Government's Sentencing Submission, p. 9).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,

               -against-

               07-Cr-1015 (LAK)

MICHAEL DEDE,

               Defendant.
------------------------------------x

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on the 21st day of May 2008, I caused to be served via Electronic Filing a true copy of Defendant Michael Dede's Memorandum In Support of His Objection to the Final PSIR and in Response to the Government's Sentencing Submission on Assistant United States Attorneys Todd Blanche and John Hillebrecht. A copy of same has also been served via email to James Mullen at U.S. Probation for the Southern District of New York.

Dated: New York, New York
      May 21, 2008

LIAM C. EWING, JR.